IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD G. DORSEY,

  Petitioner,       CASE NO. 2:09-cv-486
              JUDGE FROST
v.              MAGISTRATE JUDGE KEMP

ED BANKS, WARDEN,

  Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that a conditional writ be granted.

## I. PROCEDURAL HISTORY

The procedural history of this case is summarized as follows. The December 28, 2006 session of the Licking County Grand Jury indicted petitioner on six felony counts, all of which accused petitioner of engaging in sexual conduct or having sexual contact with Bonnie Parker, who was described in the indictment as having been unable to resist or consent because of a mental or physical condition or because of advanced age. The case proceeded to trial, and petitioner was found guilty of one count of rape and three counts of gross sexual imposition, although the jury also found that petitioner did not use force or threats of force in connection with these offenses. Petitioner was sentenced to a ten-year term of imprisonment on the rape count and one-year terms of imprisonment on the three

gross sexual imposition counts, with all sentences running concurrently. *Return of Writ, Exhibits 1-2.*

On July 12, 2007, petitioner filed an appeal to the Fifth District Court of Appeals. He raised six issues on appeal, including:

(1) a challenge to the sufficiency of the evidence, including an assertion that the convictions on all counts were against the manifest weight of the evidence;

(2) a due process challenge based on "the lack of differentiation in the counts of the indictment, the trial court's inability to specify the numerical designation of the acquitted counts of rape, and its failure to narrow the time fame in the jury instructions for the remaining counts";

(3) a Confrontation Clause challenge to the admission of certain statements made by the victim during a forensic interview;

(4) a due process challenge based on alleged prosecutorial misconduct;

(5) an ineffective assistance of counsel claim based on five alleged areas of deficient performance by trial counsel, including failing to challenge the indictment and jury instructions, to object to inadmissable evidence and prosecutorial misconduct, eliciting or inviting prejudicial testimony during cross-examination, calling petitioner's wife as a defense witness, and committing prejudicial errors during closing argument; and

(6) a challenge to the ten-year sentence for the rape conviction.

*Petition, Exhibit 3.* In a decision dated May 23, 2008, the court of appeals overruled all six assignments of error and affirmed petitioner's conviction and sentence. *State v. Dorsey,* 2008 WL 2571851 (Licking Co. App. May 23, 2008). Petitioner timely appealed the case to the Ohio Supreme Court, raising all of the same issues except the challenge to the sentence. *Petition, Exhibit 7.* However, the Ohio Supreme Court did not accept petitioner's appeal, ruling that it did not involve any substantial constitutional question. *See State v. Dorsey,* 119

2

Ohio St. 3d 1487 (2008); *Petition, Exhibit 9*.

On June 15, 2009, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  Petitioner's convictions for one count of rape and three counts of gross sexual imposition of a "substantially impaired" victim are not supported by evidence sufficient to satisfy the Due Process Clause of the Fifth and Fourteenth Amendments.

> 2.  Lack of differentiation between the counts of the indictment, an ambiguous partial-acquittal ruling, and overbroad jury instructions deprived Petitioner of his Fifth And Fourteenth Amendment right to adequate notice of the charges, and the ability to prepare a defense and protect himself against double jeopardy.

> 3. The admission of the alleged victim's testimonial statements made during a forensic interview accusing Petitioner of sexual assault violated his Sixth and Fourteenth Amendment right to confront and cross-examine his accuser..

> 4.  Repeated instances of prosecutorial misconduct and overreaching denied Petitioner his right to due process and a fundamentally fair jury trial under the Fifth, Sixth and Fourteenth Amendments.

> 5.  Trial counsel's deficient performance denied Petitioner his Sixth and Fourteenth Amendment right to the effective assistance of counsel.

It is the position of the respondent that all of petitioner's claims are without merit, and that the second claim has been procedurally defaulted.

## II.  THE FACTS

The facts of this case, as explained by the Fifth District Court of Appeals, are as follows:

3

{¶ 2} Bonnie Parker was born on December 10, 1926. (1T. at 145). Prior to February 2006, Bonnie lived independently in an apartment in Pataskala. Bertha Dorsey, her daughter, and appellant, Bertha's husband, assumed the responsibility of providing her with needed care and assistance. Appellant took prescription medicine to her before and after work and often brought her dinner.

{¶ 3} On February 25, 2006, a Pataskala police officer took an offense report from Pamela Parker regarding her mother Bonnie Parker. The report was turned over to Detective Andy Waugh for investigation. After the detective interviewed Bonnie Parker, he sent her to Grant Hospital in Columbus for a forensic rape examination. In the meantime, the detective collected evidence from her apartment. He found a semen stain on a chair in the living room. DNA testing established that the semen belonged to appellant.

{¶ 4} At the hospital, Bonnie Parker told Kailey Mahan, a forensic nurse that two days earlier, her son-in-law, appellant, hugged her, grabbed her breasts and vagina, got on top of her, and engaged in vaginal intercourse with her. She stated that while this was happening, "I fought him." (1T. at 227). She further testified that Bonnie told her "he's been doing it to me for a while." (1T. at 228). Ms. Mahan noted a bruise on Bonnie's left inner thigh. (1T. at 230). She further noted redness in her right labia minora and tearing in the posterior fourchette. (1T. at 232). Additionally, Ms. Mahan noted "purple, red bruising ... to the vaginal wall." (1T. at 236). Finally, Ms. Mahan noted that Bonnie had been experiencing pain and discomfort due to her injuries. (1T. at 238). Ms. Mahan noted the trauma was consistent with Bonnie Parker's verbal account.

{¶ 5} In December 2006, the Licking County grand jury returned an indictment charging appellant with three identically worded counts of rape and three identically worded counts of gross sexual imposition ("GSI"). Each count identified Bonnie Parker, his mother-in-law, as the alleged victim and averred that the offense conduct occurred "between the dates of February 2005 and February 22, 2006." Each count alleged that each offense was committed by force or threat of force "and/or" while Ms. Parker's ability to consent to, or resist, sexual relations was substantially impaired due to her mental or physical condition, or advanced age.

{¶ 6} Bonnie Parker did not testify in the jury trial. The parties agreed before trial that she was incompetent to testify. (1T. at 57-64). The state relied on her forensic interview at the hospital as its evidence of a specific incident of

4

sexual intercourse between her and the appellant.

{¶ 7} Bonnie Parker was eighty years old at the time of trial. (1T. at 136). She had been a patient of Dr. Ronald Vargo since 1993. (1 T. at 98). Ms. Parker suffers from hypertension, diabetes, heart disease, and dementia. ( Id. at 98). Dr. Vargo testified, "Multi-infarct dementia" is "a condition based on underlying medical conditions, hypertension, diabetes, heart disease, and basically causes hardening of the arteries in the brain, and over time the blood flow is choked off, so those areas of the brain just die away." (1T. at 99-100). Dr. Vargo testified that Bonnie began having memory problems in the year 2000. ( Id. at 101; 126). By the year 2003, her problems progressed to the stage where medication was prescribed for her dementia. ( Id. at 102; 126). Dr. Vargo defined dementia as a decline in intellectual function. ( Id. at 118). The allegations in the case at bar occurred after Ms. Parker had been diagnosed with dementia. ( Id. at 120). Interim Health Care, the agency proving in-home services to Ms. Parker was brought in the year 2005, after she had been released from the hospital. ( Id. at 128). The diagnosis at that time was Alzheimer's/dementia. ( Id. at 128). At that point, she was receiving two medications directed specifically to her dementia. ( Id. at 129). Dr. Vargo testified on cross-examination that in his opinion once a person is diagnosed with dementia the person cannot be relied upon to make a decision concerning sexual relations. ( Id. at 124; 131). He further testified that Ms. Parker was not able to consent to sexual relations. ( Id. at 115; 117-118).

{¶ 8} Pamela Parker, Bonnie's daughter, testified during the time period alleged in the Indictment, her mother was "forgetting stuff" and was not able to take care of herself. (1T. at 143). She further testified that her mother suffered from Alzheimer's and dementia that was severe until she received treatment and in-home care. (1T. at 145-146).

{¶ 9} Appellant denied having sexual relations with Ms. Parker when interviewed by the police. (1T. at 185). He denied ever exposing himself to Ms. Parker. ( Id. at 188). He further denied ever bathing, changing or showering Ms. Parker. ( Id.). Appellant's semen was found on a chair in Ms. Parker's home. (1T. at 182). Ms. Parker had injuries consistent with having had sexual relations. (1T. at 225-241).

{¶ 10} In the defense case, Diane Ferguson, the case manager for the Passport Program at the Central Ohio Area Agency on Aging testified that Bonnie Parker qualified for home health care services, but did not meet the criteria for any specialized mental health treatment or assistance. (1T. at 260). On

cross-examination, Ms. Ferguson testified that under the program's criteria dementia is classified as a physical disorder not as a mental disease. ( Id. at 269).

{¶ 11} Appellant's wife and Bonnie Parker's son, James, testified and expressed their belief that appellant did not rape their mother.

{¶ 12} Appellant testified on his own behalf. He admitted having consensual sexual intercourse with his mother-in-law on three occasions during a two-week period in early 2005. Appellant was aware at the time that Bonnie had been diagnosed with dementia. (1T. at 307-308). He testified that Ms. Parker was the aggressor. (1T. at 310). He further admitted to having sex with his mother-in-law while she was bent over the chair in her living room. (1 T. at 311). Appellant testified that his semen was found on the back of that chair because he masturbated while his mother-in-law was sleeping in the chair. (1T. at 312-313). Appellant further admitted that he had Bonnie rub his penis with lotion because "it was dry down there ." (1T. at 316). He admitted to having his mother-in-law fondle him "six or seven times." (1 T. at 316). He said that she knew what she was doing and that he did not take advantage of her mental state. (1 T. at 305, 310). He denied raping her and denied having sexual relations with her on February 23, 2006. (1 T. at 313-314). He denied committing any crimes, but acknowledged that from a moral standpoint, he knew that having sexual relations with his mother-in-law "wasn't right." (1 T. at 320).

{¶ 13} At the conclusion of the state's case, the trial court directed an acquittal on two of the rape counts. (1T. at 255-256). The jury returned verdicts of guilty on the remaining counts, and rendered special findings stating that the state had failed to prove that appellant compelled his mother-in-law to submit to sexual conduct or sexual contact by force or threat of force. The court sentenced appellant to a maximum ten-year prison term on the rape conviction and concurrent one-year prison terms on the GSI convictions. (2T. at 414).

*State v. Dorsey,* 2008 WL 2571851, *1-3.

## III.  THE STANDARD OF REVIEW

When, as here, the claims presented in a habeas corpus petition have been presented

to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this standard as follows:

> [A] decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." [*Williams v. Taylor*, 529 U.S. 362 (2000)] at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was

7

unreasonable. *Id*.

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006).  The Court will apply this standard to all of petitioner's claims except where it is specifically noted that a different standard of review applies.

### IV.  CLAIM ONE

Petitioner's first claim raises the issue of whether the evidence presented in the state court trial was sufficient, from a constitutional viewpoint, to support any of the four convictions.  The state court decided this claim in the following manner:

> {¶ 21} In his First Assignment of Error, appellant argues that his convictions for rape and gross sexual imposition are against the weight and sufficiency of the evidence. Specifically, appellant maintains that the State failed to produce adequate proof that the victim was substantially impaired. We disagree.
>
> * * *
>
> {¶ 23} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, superseded by State constitutional amendment on other grounds as stated in *State v. Smith* (1997), 80 Ohio St.3d 89.
>
> {¶ 24} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks, supra*. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins*, 78 Ohio St.3d at 386.

* * *

{¶ 30} In the case at bar, appellant was found guilty of one count of rape, which required that appellant knew the victim's capability was substantially impaired. More particularly, R.C. 2907.02 states:

{¶ 31} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

{¶ 32} " * * *

{¶ 33} "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."

{¶ 34} Appellant was also found guilty of three counts of gross sexual imposition in violation of R.C. 2907.05 which states:

{¶ 35} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

{¶ 36} " * * *

{¶ 37} "(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age."

{¶ 38} Appellant first argues that the victim's statements indicate that she made a knowing and conscious decision to refuse to consent to, and affirmatively resist, sexual intercourse and fondling. Therefore, she was not "substantially impaired." In essence, appellant claims that if the State

9

produces testimony that the victim resisted sexual relations, it may not prosecute the accused upon the theory that the victim was "substantially impaired ."

* * *

{¶ 43} The Ohio Supreme Court has held that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." *State v. Zeh* (1987), 31 Ohio St.3d 99, 104. " 'Substantial impairment' need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct." *State v. Brady*, Cuyahoga App. No. 87854, 2007-Ohio-1453 at ¶ 78;  *State v. Jordan*, Harrison App. No. 06 HA 586, 2007-Ohio-3333 at ¶ 97; *State v. Hillock*, 7th Dist. No. 02-538-CA, 2002-Ohio-6897, at ¶ 21. However, although Zeh touched on the issue of what constituted "substantial impairment," its holding was limited to instructing when the defense could ask the court to bar the state from utilizing evidence of the contested mental condition of a victim-potential witness. Id. at 105, 509 N.E.2d 414. *State v. Hillock*, Harrison App. No. 02-538-CA, 2002-Ohio6897 at ¶ 24.

{¶ 44} In *State v. Novak*, Lake App. No.2003-L-077, 2005-Ohio-563, the Court made the following observation:

{¶ 45} "Novak disputes whether Doe's ability to resist was substantially impaired and, if it were, whether he knew or had reasonable cause to believe that her ability to resist was impaired. Novak cites to several instances in the record where Doe exerted her will, either verbally or by pulling away, to terminate sexual contact. Novak also cites to testimony where Doe initiated the sexual contact. Finally, Novak claims that when Doe would express her discomfort, the sexual contact would cease. Therefore, Novak concludes, any sexual contact between himself and Doe was consensual.

{¶ 46} "Novak's argument misconstrues the nature of Doe's impairment by equating the ability to resist with the ability to consent. The gross sexual imposition statute is written disjunctively; the sexual contact between Novak and Doe is unlawful if Doe's ability to resist or consent is substantially

impaired. Even a five-year-old child can resist sexual contact by verbalizing discomfort or the desire that the contact cease and by pulling away; the child's ability to resist, however, does not mean that the child has consented to the initial contact or even has the ability to do so. Novak could still be found guilty provided the state proved that Doe's ability to appraise the nature of her conduct was diminished." Id. at ¶ 19-20.

{¶ 47} Both R.C. 2907.02 and R.C. 2907.05 make the activity unlawful if the victim's ability to resist or consent is substantially impaired. A finding that he did not use force does not equate with a finding that the victim had the ability to consent or to resist. Accordingly, the issue in the case at bar is whether the victim's ability to resist or give consent to the sexual conduct and sexual contact she engaged in with appellant was substantially impaired. *See, also, State v. Brady, supra.* (Appellant found guilty of rape of mentally retarded stepdaughter whose ability to resist or consent was substantially impaired due to a mental or physical condition even though victim told appellant "no" and "that she did not want to have sex.").

{¶ 48} As to whether appellee proved that victim's ability to resist or consent was substantially impaired by a physical condition or because of advanced age, the appellant next argues that because the trial court did not incorporate "mental condition" in the jury instructions as a basis for finding substantial impairment this Court cannot consider the victim's mental condition on the issue of substantial impairment. To do so would result in appellant being convicted of a statutory ground that was not presented to the jury.

{¶ 49} Specifically, appellant argues that this court may not consider evidence of the victim's mental condition because in its instructions to the jury, the trial court defined "substantial impairment" in terms of "physical condition or advanced age." In other words, the trial court did not include the victim's "mental condition" in its definition of substantial impairment.

{¶ 50} This is not a case, as appellant argues, that the State asks this Court to decide the appeal on the theory it did not pursue at trial and on which the challenged conviction was obtained, but on a new theory that it advances for the first time on appeal. The Indictment and Bill of Particulars both contained the definition of "substantial impairment" relating to a "mental or physical condition." Both the prosecutor and appellant's trial counsel referred to Alzheimer's and dementia in their respective summations. Accordingly, the "mental condition" theory was before the jury "as a part of a coherent theory of guilt and not merely due to an incidental reference and that upon

11

reviewing the principal stages of trial, the theory can be characterized as having been presented [to the jury] in a focused or otherwise cognizable sense." *Chiarella v. United States* (1980), 445 U.S. 222, 236, 100 S.Ct. 1108, 1119; *Cola v. Reardon* (1st Cir. 1986), 787 F.2d 681, 693, *cert. denied*, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986).

{¶ 51} Both the rape and the gross sexual imposition statute list two impairments: 1). mental or physical condition; or 2). advanced age. Appellant does not dispute that by the time the case went to trial Bonnie Parker's dementia had progressed to the point that she was "unavailable" as a witness. Appellant merely ascribes the condition to a mental, rather than a physical ailment. We would note that appellant presented the testimony of Diane Ferguson, the case manager for the Passport Program at the Central Ohio Area Agency on Aging. (1T. at 260). On cross-examination, Ms. Ferguson testified that under the program's criteria dementia is classified as a physical disorder not as a mental disease. ( Id. at 269).

{¶ 52} The ultimate question in cases of this kind is not as to the exact causation of substantial impairment. The ultimate questions are (1) does victim have a determinable physical or mental impairment, or advanced age, and (2) if so, does it render him or her unable to resist or consent to the sexual conduct or contact. The exact cause is not as important as the result. Whether the victim's ability to consent or resist was substantially impaired by a mental, rather than a physical, ailment does not change the fact that the victim's ability to resist or consent was substantially impaired within the meaning of the statutes.

{¶ 53} As to whether appellee proved that the victim's ability to resist or consent was substantially impaired by a physical condition, or because of advanced age the following testimony is relevant.

{¶ 54} Bonnie Parker was eighty years old at the time of trial. (1T. at 136). She had been a patient of Dr. Ronald Vargo since 1993. (1T. at 98). Ms. Parker suffers from hypertension, diabetes, heart disease, and dementia. ( Id. at 98). Dr. Vargo testified, "Multi-infarct dementia" is "a condition based on underlying medical conditions, hypertension, diabetes, heart disease, and basically causes hardening of the arteries in the brain, and over time the blood flow is choked off, so those areas of the brain just die away." (1T. at 99-100). Dr. Vargo testified that Bonnie began having memory problems in the year 2000. ( Id. at 101; 126). By the year 2003, her problems progressed to the stage where medication was prescribed for her dementia. ( Id. at 102;

12

126). Dr. Vargo defined dementia as a decline in intellectual function. ( Id. at 118). The allegations in the case at bar occurred after Ms. Parker had been diagnosed with dementia. ( Id. at 120). Interim Health Care, the agency providing in-home services to Ms. Parker was brought in the year 2005, after she had been released from the hospital. ( Id. at 128). The diagnosis at that time was Alzheimer's/ dementia. ( Id. at 128). At that point, she was receiving two medications directed specifically to her dementia. (Id. at 129). Dr. Vargo testified on cross-examination that in his opinion once a person is diagnosed with dementia the person cannot be relied upon to make a decision concerning sexual relations. ( Id. at 124; 131). He further testified that Ms. Parker was not able to consent to sexual relations. ( Id. at 115; 117-118).

{¶ 55} Pamela Parker, Bonnie's daughter testified during the time period alleged in the Indictment, her mother was "forgetting stuff" and was not able to take care of herself. (1T. at 143). She further testified that her mother suffered from Alzheimer's and dementia that was severe until she received treatment and in-home care. (1T. at 145-146).

{¶ 56} Appellant denied having sexual relations with Ms. Parker when interviewed by the police. (1T. at 185). He denied ever exposing himself to Ms. Parker. ( Id. at 188). He further denied ever bathing, changing or showering Ms. Parker. ( Id.). Appellant's semen was found on a chair in Ms. Parker's home. (1T. at 182). Ms. Parker had injuries consistent with having had sexual relations. (1T. at 225-241).

{¶ 57} At trial appellant admitted to having sexual intercourse and to having sexual contact on more than one occasion with Ms. Parker. (1 T. at 313).

{¶ 58} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crimes of rape and gross sexual imposition.

{¶ 59} We hold, therefore, that the State met its burden of production regarding each element of the crime of rape and gross sexual imposition and, accordingly, there was sufficient evidence to support appellant's conviction.

*State v. Dorsey*, 2008 WL 2571851, *4-10.

In his petition and his traverse, petitioner raises the same argument as he did in the state court: that Bonnie Parker's statement to the nurse who examined her for rape, to the effect that she attempted to resist petitioner's effort to have sexual intercourse with her, is fatally inconsistent with the state's theory that she lacked the capacity to consent.  He further argues that other evidence concerning Ms. Parker's ability to describe the event in detail, and her clear understanding of what had occurred, "conclusively negated the inference that Bonnie Parker's dementia reduced, decreased, or diminished her ability to resist or consent to sexual relations with Petitioner."  *Traverse,* Doc. #16, at 38.  He asserts that the state court unreasonably applied federal law, specifically the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), by concluding that Dr. Vargo's testimony established Ms. Parker's incapacity at the time of the event, as opposed to at the time of trial,  or that it contradicted the nurse's testimony about Ms. Parker's ability to resist petitioner when he attempted to engage in sexual intercourse with her.  He further asserts that the testimony of Pamela Parker, the victim's daughter, was too general to support an inference that her mother could not have consented to, or resisted, sexual intercourse, but showed only that Bonnie Parker suffered from only a general inability to cope with decision-making.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, *supra*, 443 U.S. at 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the

14

evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (*quoting Jackson,* at 326). For example the trier of fact is entitled to disbelieve a defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility on account of a prior felony conviction. *Id.*

> The reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *Glasser v. United* States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Kines v. Godinez,* 7 F.3d 674, 678 (7th Cir.1993). Determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *United States v. Saunders,* 886 F.2d 56 (4th Cir.1989). The habeas court does not substitute its judgment for that of the finder of fact. *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir.1995).
>
> The habeas court must review all of the evidence in the record and determine whether a reasonable jury could have found guilt beyond a reasonable doubt. "The evidence must afford a substantial basis from which a fact in issue can reasonably be inferred." *Spalla v. Foltz,* 615 F.Supp. 224, 227 (E.D. Mich.1985). Circumstantial evidence from which a reasonable inference of guilt beyond a reasonable doubt may be drawn is constitutionally sufficient. *Id.; see also Evans-Smith v. Taylor,* 19 F.3d 899, 909 (4th Cir.1994) ("circumstantial evidence need not exclude every reasonable hypothesis of innocence. Rather 'circumstances altogether inconclusive, if separately

> considered, may, by their number and joint operation ... be
> sufficient to constitute conclusive proof.' " *(quoting Stamper v.*
> *Muncie*, 944 F.2d 170, 174 (4th Cir.1991))).

*Alder v. Burt*, 240 F.Supp.2d 651, 661 (E.D. Michigan 2003).

Further, there is a "double layer" of deference due to state court determinations about the sufficiency of the evidence.  As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the substantive standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt."  In addition, even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).  This is a substantial hurdle for a habeas corpus petitioner to overcome, and petitioner has not done so here.

Although the state court of appeals did not cite directly to *Jackson v. Virginia*, it drew its sufficiency of the evidence standard from *State v. Jenks*, 61 Ohio St. 3d 259 (1991), which, in turn, relied on *Jackson*.  Thus, it is clear that the state court applied the proper standard under federal law.  The only question is whether its application of that standard to the facts of this case was unreasonable.

The state court's decision relied heavily on another Ohio intermediate appellate court decision, *State v. Novak*, 2005 WL 336337 (Lake Co. App. February 11, 2005).  *Novak*

also involved a claim that an alleged victim who had demonstrated the ability to resist sexual advances or sexual conduct could not be found to have been substantially impaired in that capacity. The court concluded that the argument was unfounded because, under Ohio law, the ability to resist and the ability to consent are not two sides of the same coin; rather, the applicable statute treats them disjunctively, and permits a conviction for gross sexual imposition (or, as in this case, rape) if either of these abilities is substantially impaired, even if the other is not.

The testimony which the court of appeals' opinion focused on was all related to Bonnie Parker's ability to consent to sexual intercourse or contact. As the court noted, there was medical evidence that Ms. Parker began having memory problems due to multi-infarct dementia as early as five years prior to the time that, by his admission, petitioner engaged in sex with her, and six years prior to the most recent alleged rape. By 2005, she had been on medication for dementia for two years. Her physician, Dr. Vargo, specifically testified that Ms. Parker was not competent to pay her bills, to pay her rent, to clean her home, to make sure she ate enough food to sustain herself, or to consent to "any sort of sexual activity." *Return of Writ, Attachment 2 (State court transcript),* at 102-03. He further testified that even if she had moments of lucidity, that fact would not change his opinion about her inability to consent to sexual activity. (Tr. 103). Cross-examination did not produce any contradictory testimony. The court of appeals also focused on the testimony of Pamela Parker to the effect that although, during the relevant time frame, her mother was "in and out of it most of the time" and that she "knew where I lived and everything," she was "not

17

really" able to take care of herself and that she suffered from Alzheimer's and dementia which was "really bad there for a while." (Tr. 145-46).

This Court is bound to follow the Ohio courts with respect to the correct construction of the statutory language at issue. *See White v. Steele*, 602 F.3d 707, 711 (6th Cir. 2009) ("When reviewing habeas claims by state prisoners, federal courts may not reinterpret state law"). Thus, this Court must accept the proposition adopted by the court of appeals that having the ability to resist sexual contact is not necessarily inconsistent with the ability to consent. The court of appeals' conclusion that there was evidence from which a reasonable jury could have found that Bonnie Parker lacked the ability to consent, even if she could have resisted petitioner's advances, is supported by testimony which, if believed, established exactly that fact. Contrary to petitioner's argument, Dr. Vargo did testify about Bonnie Parker's mental condition at the relevant time, *i.e.* during 2005 and 2006, and not just about her competency to make such decisions as of the time of trial. At a minimum, this Court cannot say, as it would be required to do if petitioner were to prevail on this issue, that the state court unreasonably applied the *Jackson* test here. That being so, petitioner's first claim provides no basis for habeas corpus relief.

## V.  CLAIM TWO

Petitioner's second claim is that his due process rights and his right to be free from being placed twice in jeopardy for the same crime were violated because of the way in which the indictment was worded, the trial court's ruling on his motion for partial acquittal, and the way the jury instructions were phrased. As fleshed out by the traverse,

petitioner notes that the three counts of rape contained in the indictment were worded identically, alleging that the rapes all occurred between February, 2005 and February 22, 2006.  When Bonnie Parker was found incompetent to testify, the trial judge, on petitioner's motion, dismissed two of the rape counts (although which two were dismissed is not clear), because the only evidence presented by the prosecution about an act of sexual intercourse came from Bonnie Parker's statement to a nurse about events which occurred on February 23, 2006.  When petitioner took the stand, he admitted to having intercourse with Bonnie Parker in 2005, but not in 2006.  Nevertheless, according to petitioner, the jury instructions allowed the jury to convict petitioner on the remaining rape count, and all of the gross sexual imposition counts, if the jury found that the actionable conduct occurred either in 2005 or in 2006.  Petitioner asserts both that the level of ambiguity in the indictment exceeded what the due process clause, as interpreted by *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), permits, and that there is a very real possibility that the jury convicted him on one of the two counts which had been dismissed by the trial judge, thus violating the double jeopardy clause.  As an additional part of this claim, he asserts that the trial judge's dismissal of two of the rape counts led him to believe that the only remaining rape charge related to the rape which allegedly occurred on February 23, 2006, and that he was not incriminating himself on that charge by testifying about having had intercourse with Bonnie Parker in 2005.  Finally, he asserts that to the extent that any part of this claim was procedurally defaulted, that procedural default can be excused because of the ineffective assistance rendered to him by trial counsel in not raising these issues at trial.

19

The court of appeals addressed these arguments in this fashion:

{¶ 66} In his Second Assignment of Error appellant argues that his convictions must be reversed because it is impossible to determine if he was convicted of the same crimes for which he was indicted and he is unable to protect himself of his right not to be tried twice for the same offense. We disagree.

{¶ 67} To the extent that appellant argues the indictment was defective, he waived that argument by failing to raise it before trial. See Crim. R. 12(C)(2); *State v. Schultz* (1917), 96 Ohio St. 114, 117 N.E. 30; *State v. Hardy,* Cuyahoga App. No. 82620, 2004-Ohio-56; *State v. Blalock*, Cuyahoga App. Nos. 80419 and 80420, 2002-Ohio-4580; *State v. Kenney* (May 10, 2000), 5th Dist. No. CA93-480A; *State v. Avery* (1998), 26 Ohio App.3d 36, 709 N.E.2d 875; *State v. Biros* (1997), 78 Ohio St.3d 426, 436, 678 N .E.2d 891, 901-902, citing *State v. Joseph* (1995), 73 Ohio St.3d 450, 455, 653 N.E.2d 285, 290-291; and *State v. Mills* (1992), 62 Ohio St.3d 357, 363, 582 N.E.2d 972, 980 (Under Crim. R. 12(B) and 12(G), alleged defects in an indictment must be asserted before trial or they are waived"); *see, also, State v. Williams* (1977), 51 Ohio St.2d 112, 117, 98, 101, 364 N.E.2d 1364, 1367-1368, death penalty vacated (1977), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156.

{¶ 68} We must be mindful that in dealing with an offense against a substantially impaired person, a certain degree of inexactitude in averring the date of the offense is not necessarily fatal to its prosecution. *State v. Shepherd*, Cuyahoga App. No. 81926, 2003-Ohio-3356. This is especially relevant in this matter as the case proceeded to trial approximately one to two years after the alleged incidents, and at a time when the victim was no longer competent to testify at trial.

{¶ 69} Appellant had notice and opportunity to defend against the charge for which he was convicted. In the case at bar, appellant admitted to having sexual intercourse with Bonnie Parker on three different occasions. (1T. at 313-314). Ms. Parker had injuries consistent with having had sexual relations. (1T. at 225-241). The jury was not required to believe appellant when he denied having sexual intercourse with Ms. Parker on February 23, 2006.

{¶ 70} There was no danger of appellant being convicted two times for the same offense because the jury was only asked to decide one count of rape that was alleged to have occurred during the time period set forth in the Indictment. Further, the two additional counts of rape were dismissed.

20

Accordingly, a rational trier of fact could have found one offense of rape of a substantially impaired person proven beyond a reasonable doubt based entirely upon appellant's admission to having sexual intercourse with his mother-in-law. See, *State v. Brady*, Cuyahoga App. No. 87854, 2007-Ohio-1453; *State v. Hardy*, Cuyahoga App. No. 82620, 2004-Ohio-56. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶ 71} Appellant's Second Assignment of Error is overruled.

*State v. Dorsey*, 2008 WL 2571851, *11-12.

The foundation of petitioner's argument is the Sixth Circuit decision in *Valentine v. Konteh*, 395 F.3d 626 (6ᵗʰ Cir. 2005). *Valentine* did not announce a new legal principle; rather, it drew its essence from *Russell v. United States*, 369 U.S. 749 (1962). *Russell* held, among other things, that an indictment is sufficient under the due process clause if it does three things: recites the elements of the offense being charged, gives the defendant fair notice of the nature of the charge, and describes the charge specifically enough so that, whether the defendant is found guilty or acquitted, he or she will be able to defend against a subsequent prosecution for the same offense on double jeopardy grounds. *See Valentine*, 395 F.3d at 631.

In *Valentine*, the Court of Appeals affirmed a grant of habeas corpus relief to an Ohio petitioner who, like the petitioner here, was charged with multiple identically-worded counts of rape and gross sexual imposition, reasoning that, under the particular circumstances of that case, the wording of the indictment left petitioner with "little ability to defend himself" and created both the real possibility that petitioner would be unable to identify what conduct he had been convicted of should another prosecution occur, and

21

that he "would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense." *Id.* at 634-35.  Part of the problem identified in *Valentine* was that the minor victim did not testify as to specific acts on specific dates, but simply provided the jury with an estimate of how many times the defendant had either forced her to have intercourse, or subjected her to sexual touching, over the period of time covered by the indictment.  Such testimony made it next to impossible to determine for what separate acts the defendant was convicted.  As relief, however, rather than vacating all of the convictions, the Court of Appeals affirmed the district court's decision not to vacate the conviction on  the first of the twenty identical rape counts, and the first of the fifteen gross sexual imposition counts, reasoning that "[h]ad this case been tried in two counts, the convictions would clearly stand." *Id.* at  637.

In the instant case, the state court of appeals conceptualized petitioner's argument as raising, at least in part, a challenge to the sufficiency of the indictment, and concluded that any such issue was waived because it had not been asserted prior to trial.  The court went on, however, to conclude that petitioner had been provided with fair notice of the charge of conviction and that there was no danger of his having been convicted twice for the same offense because only one count of rape went to the jury.  The court did not specifically address either the argument that the count of conviction could have been one of the dismissed counts, a scenario that could raise double jeopardy problems, or the assertion that petitioner would not be able, if necessary, to identify the conduct for which he was convicted with enough specificity to raise his conviction as a bar to a future

22

prosecution for similar conduct.

As noted above, respondent contends that at least some part of this claim was procedurally defaulted, and petitioner counters that any default was excused by trial counsel's ineffectiveness in failing to raise a pre-trial challenge to the sufficiency of the indictment.  Because the precise claim being raised here depends not only on the way in which the indictment was worded, but, as in *Valentine*, the way in which the State went about proving its case, this Court is not persuaded that this claim either could or should have been raised in a pre-trial challenge to the indictment.  Because that is the only procedural default identified and applied in the court of appeals' opinion, the Court finds that this claim is not barred by reason of procedural default, and that it can be reviewed on its merits.  *See, e.g., Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) ("A procedural default analysis ... is two-fold: the federal court must determine if a petitioner failed to comply with a state procedural rule; and it also must analyze whether the state court based its determination on the state procedural rule").

In order to place the claim in its proper context, a thorough review of the actions taken prior to trial and taken at trial by the state trial court is necessary.  As noted, the three counts of rape and three counts of gross sexual imposition contained in the indictment were undifferentiated in that they charged petitioner with the commission of exactly the same offense during exactly the same time period, without making any effort to distinguish by date, by location, or otherwise, how the three charged acts differed from one another.  Prior to trial, petitioner's counsel requested a bill of particulars.  It was not much more

23

enlightening.  As to the rape counts, the bill of particulars stated that "[o]n several occasions between February 2005 and February 22, 2006, the defendant, by force, had sexual intercourse with Bonnie Parker at her residence located at 609 H Conine Way, Pataskala, Licking County, Ohio.  These acts took place in the victim's bedroom and also on a chair in the living room."  *Traverse, Exhibit 13.*  Thus, the bill of particulars identified two different locations within the residence where the rapes allegedly occurred, but it did not tie any of the three rape counts to either of these two locations, and it supplied no further information distinguishing the counts.

It appears that it was the State's intention to prove at trial, through the testimony of the victim, that at least three instances of sexual intercourse occurred in the charged time frame.  However, shortly before trial, she was found to be incompetent to testify.  As a result, the only evidence which the prosecution presented about any act of intercourse between petitioner and his mother-in-law came in the form of testimony from a police detective that petitioner's DNA was matched to semen found on the back of a chair in Bonnie Parker's living room; opinion testimony elicited from that same detective, on cross-examination, that petitioner raped her on the back of the chair where the semen was found; the detective's statement, also elicited on cross-examination, that he believed what the victim had told him on the day he investigated the rape complaint, which was February 23, 2006; testimony from a nurse (admitted by the trial judge under Ohio Evid.R. 804(B), and over defense counsel's objection)that Bonnie Parker said she had been raped by her son-in-law; the nurse's reading of Bonnie Parker's statement describing the most recent act

of intercourse, coupled with her statement that "He has been doing it to me for a while"; and the nurse's testimony that the results of a physical examination of Ms. Parker conducted on February 25, 2006 were consistent with her report of a recent sexual assault.

At the close of the State's evidence, petitioner's counsel moved for a judgment of acquittal on the grounds that the State had not proven forcible sexual intercourse, lack of consent, or, indeed, any sexual conduct or contact at all.  In response, the prosecuting attorney argued that the note read by the nurse established the basis of the charge of rape and gross sexual imposition.  The prosecutor then, on his own, brought up the issue of multiple counts, arguing that the evidence from Detective Waugh concerning "allegations" of rape having occurred in multiple locations in the residence and the statement in the note read by the nurse to the effect that the conduct had occurred "for a while" was enough to support conviction on multiple counts of rape.

The trial judge was not completely convinced.  He agreed that the nurse's testimony was sufficient to support "at least a rape count" and that the victim's statements that petitioner "grabbed her twice," together with the evidence of a bruise on her thigh, "covers three counts of gross sexual imposition ...."  (Tr. 255).  The evidence of the other rapes, however, was described by the judge as "vague" and as "nothing as specific as a date or time or other specific instances."  (Tr. 256).  Consequently, two of the rape counts were dismissed.  *Id*.  It does not appear, however, that the trial judge contemporaneously informed the jury of his decision, but rather invited defense counsel to proceed with his case. (Tr. 259).  The first time the jurors were told that they were to consider only one count

25

of rape was in the prosecutor's closing argument.  (Tr. 350).

Once the defense case proceeded, petitioner took the witness stand and admitted to having had sexual intercourse and other sexual contact with Ms. Parker.  However, he denied having had sex with her on February 23, 2006, stating that "it had been months between" the last time they had sex (which he insisted was consensual) and the date of the rape examination.  (Tr. 315).  In closing argument, the prosecutor did not appear to assert that any of the instances of intercourse to which petitioner testified would support a rape conviction, but rather focused his argument on the nurse's report from February 25, 2006, the detective's investigation of that rape complaint, and the fact that it was unlikely that the injuries described in that report came from events that occurred many months before.

The jury instructions did not specifically identify any particular alleged act of intercourse as the one underlying the remaining rape count.  Rather, the judge told the jury that it should return a guilty verdict if it found "beyond a reasonable doubt that on or between the dates of February, 2005, and February 22 of 2006, and in Licking County, Ohio, the Defendant engaged in sexual conduct with .... Bonnie Parker" when her ability to resist or consent was substantially impaired and the defendant knew that fact, or if he compelled her to submit by force or threat of force.  (Tr. 387-88).  As to the gross sexual imposition counts, the trial court instructed the jury as to the elements of the offense generally and the time frame alleged, and then said that the other two counts "had identical elements to the first count of gross sexual imposition set out above."  (Tr. 394).  The jury instructions did not specifically tell the jury that it had to find that petitioner committed three separate acts

26

constituting gross sexual imposition before it could return guilty verdicts on all three counts. Defense counsel made no objection to the instructions as given. (Tr. 400).

Some of the problems which might have ensued from the multiple, undifferentiated rape counts were clearly cured by the trial court's dismissal of two of them. That dismissal is a ruling by the court that the evidence supported, at most, one rape charge. Thus, the issue presented in *Valentine* when the evidence supported multiple counts, but they could not be distinguished from each other, is not present here. Further, on this issue, the instant case cannot be distinguished from *Valentine's* ultimate holding that as long as there is enough evidence to support one conviction, a conviction on one of multiple undifferentiated counts can stand. Here, as was true in *Valentine*, if the case had been charged in only one count at the outset, this particular issue would not have been present. Further, the trial court's clear ruling that the evidence supported only a rape charge arising out of the incident of February 23, 2006, gave petitioner fair notice of the specific charge against which he had to defend. Thus, there is no merit to his argument that his due process rights were violated because he did not have fair notice of the charges. For the same reason, because the nature of the remaining rape charge was clear, petitioner would have been able to raise his acquittal or conviction on that charge as a bar to further prosecution on the same charge, should that ever have occurred. In short, the dismissal of the other two rape counts, and the clarity of the ruling that the only count for which sufficient evidence existed was a count premised on the February 23, 2006 incident, cured the problem, described in *Valentine*, that "the criminal counts were not connected to

27

distinguishable incidents." *Id*. at 633.

These conclusions do not completely dispose of petitioner's second claim, however. The other part of his double jeopardy argument is that, after the trial court ruled that there was not enough evidence presented by the prosecution to support any rape charge other than whichever one of the three original counts related to the February 23, 2006 incident, the failure of the court to tell the jury about that ruling, either in its closing instructions or otherwise, raised the real possibility that the jury convicted him based on other conduct, including conduct that was covered by one or both of the dismissed charges. If that occurred, the double jeopardy clause would have been violated because the dismissal of those other charges for want of sufficient evidence, after the trial commenced, constituted a bar to further prosecution for those offenses. *See Smith v. Massachusetts*, 543 U.S. 462, 467 (2005) ("we have long held that the Double Jeopardy Clause of the Fifth Amendment prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict").

Respondent makes several arguments in response. One of them is not, however, an argument that the state court's decision either comported with *Valentine* or was not an unreasonable application of that case or the underlying double jeopardy principles. In fact, the state court neither acknowledged the *Valentine* case nor, apparently, recognized the gist of the argument based on *Valentine*, because it never addressed the precise question of whether there was a substantial possibility that petitioner had been convicted on the basis of evidence relating to one of the dismissed rape counts. Because this issue was not dealt

with by the state courts, this Court may address the issue either *de novo*, *see Thompson v. Bell*, 580 F.3d 423, 439 (6th Cir. 2009), or use an intermediate approach, *see Howard v. Bouchard*, 405 F.3d 459 (6th Cir. 2005).  As will be more fully discussed below, under either of these approaches, the Court concludes that this claim merits habeas corpus relief.

Respondent's first argument is that the state court of appeals found that the jury's verdict was, in fact, based solely on the February 23, 2006 alleged rape, which would negate any claim that the jury found petitioner guilty for conduct covered by the dismissed counts, and that this finding was reasonable.  Secondly, respondent argues that the rape count which went to the jury was not necessarily tied to the February 23, 2006 incident, because it still recited the time frame of February, 2005 to February 22, 2006, and that the jury was free to convict petitioner on one of the allegedly consensual episodes of sexual intercourse to which he testified.  Lastly, respondent asserts that the other two rape charges were not actually dismissed because the trial court never journalized an entry to that effect, so there would be no judgment of acquittal on those counts which would bar a retrial.

There are substantial problems with all three of these arguments.  First, as respondent notes, the discussion of this issue in the court of appeals opinion is terse, given that the court found that this argument was at least partially waived by petitioner's failure to challenge the indictment in a pre-trial motion.  The pertinent portion of the court of appeals opinion consists of just two sentences.  The first, which states that "[t]he jury was not required to believe appellant when he denied having sexual intercourse with Ms. Parker on February 23, 2006," does suggest that the court of appeals concluded that the

29

conviction was based on that incident.  The second relevant sentence, however, states that "a rational trier of fact could have found one offense of rape of a substantially impaired person proven beyond a reasonable doubt based entirely upon appellant's admission to having sexual intercourse with his mother-in-law."  That admission, however, specifically excluded the February 23, 2006 incident.  It is not possible to reconcile these two statements or to conclude with any degree of certainty that the court of appeals made a finding that the jury did not actually convict petitioner based upon one of the 2005 incidents to which he testified.  Even if the court had made such a finding, the record is entirely silent as to the basis of the jury's verdict, and the trial court never told the jury to limit its consideration of the evidence to the February 23, 2006 incident.  Thus, any finding of the court of appeals as to the actual basis of the jury's verdict lacks a foundation in the record.

The second argument actually presents more issues than it resolves.  Whatever else may be said about the trial judge's ruling, it is clear that he concluded that any count of rape based on events other than the February 23, 2006 incident was not supported by sufficient evidence to sustain a conviction.  The prosecutor specifically argued that the victim's statement was detailed enough to allow the jury to find that other instances of intercourse had occurred, but the judge rejected that argument.  Thus, any jury verdict which, in respondent's words, rested on a "conglomeration of the two" separate theories of the case would be a verdict on one of the dismissed counts, and a clear double jeopardy violation.

The third argument is based on the premise that state procedural rules can define

30

the events which underlie a federally-based double jeopardy claim.  As petitioner points out, in this case, the trial judge stated on the record that he was granting the motion for judgment of acquittal as to two counts of rape; the judge subsequently submitted only one of the original three counts to the jury; the jury returned a verdict on only one count; and the court of appeals opinion recites that "the two additional counts of rape were dismissed."  The trial court's failure to place a separate written entry in the record - which did not deter the court of appeals from exercising jurisdiction over the appeal, an action inconsistent with the notion that the two additional rape counts were still pending when petitioner appealed his conviction - cannot alter the reality of what occurred, nor is it a controlling factor in terms of whether the double jeopardy clause is implicated by the possibility that the jury returned a verdict against petitioner on a charge that was dismissed.

This point is well-illustrated by comparing the facts of this case to the situation presented in *Price v. Vincent*, 538 U.S. 634 (2003).  There, the petitioner raised a double jeopardy claim based on the fact that the trial court had orally granted his motion for judgment of acquittal on a first-degree murder charge.  The trial court did express, following argument on the motion, the opinion that the facts presented by the prosecution supported, at most, a charge of second-degree murder, but did not communicate the ruling to the jury and agreed to allow the prosecution to make further argument on the issue. When defense counsel objected to the presentation of any additional argument on grounds that the court had already dismissed the charge, the court indicated that it had not

31

"directed a verdict" and was reserving a ruling on whether that should be done. Subsequently, the first-degree murder charge was submitted to the jury and petitioner was convicted.

In denying petitioner relief on double jeopardy grounds, the Supreme Court (applying the deferential standard of review prescribed by the AEDPA) held that the Michigan Supreme Court's conclusion that the trial judge's comments were not "sufficiently final" to constitute the entry of a judgment of acquittal on the first-degree murder charge was not unreasonable.  In so doing, the Court reviewed a number of decisions reaching similar results, most of which relied on the fact that after the trial judge made similar comments, there was no formal action taken removing the allegedly dismissed count from the jury's consideration and no final judgment entered in the case incorporating the ruling.  *See Vincent*, 538 U.S. at 642 n. 2.  Thus, as one of those decisions held, no double jeopardy issue is raised where "the reconsideration [of such a ruling] had no effect on the continuation of the trial in which it was made, the jury remained impaneled to adjudicate lesser included charges, and that defendant was not faced with any threat of reprosecution beyond the jury already assembled to hear his case." *State v. Iovino*, 524 A.2d 556, 559 (R.I. 1987).

Here, that rationale would apply if, following its oral ruling (and assuming that no independent constitutional violation would have occurred when defendant presented his case in reliance on that ruling), the trial court changed its mind and submitted all three counts of rape to the jury.  However, that did not happen.  Following the return of the

verdict on the counts submitted, which included only a single rape count, the jury was dismissed.  Petitioner was then sentenced, judgment was entered, and he filed an appeal which was heard on its merits.  It belies reality to say that, under those circumstances, the state court did not actually dismiss the  two rape counts that were not submitted to the jury.

The Supreme Court has repeatedly emphasized that "what constitutes an 'acquittal' is not to be controlled by the form of the judge's actions." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977), *citing, inter alia, United States v. Sisson*, 399 U.S. 267 (1970).  Substance, rather than form, is the determinative factor.  *Id.*  Further, federal law controls the question of what legal effect should be given to the state court's actions.  *See, e.g., People ex rel. Maula v. Freckleton*, 782 F.Supp. 889, 893 (S.D.N.Y.) ("Federal habeas relief does not, of course, turn on interpretations of state law"), *aff'd* 972 F.2d 27 (2d Cir. 1992). Here, even the state court of appeals, looking to the substance of what occurred, described the trial court's actions as having "dismissed" the other two counts of rape.  This Court agrees with the court of appeals' characterization of what occurred, and concludes that the absence of a written journal entry to that effect in the trial court record is of no consequence in deciding petitioner's double jeopardy claim.

The fact that the Court finds each of respondent's arguments unpersuasive, however, does not automatically entitle petitioner to relief on this claim.  He still must show that the sequence of events which occurred at his trial either actually resulted in his being convicted of a charge that had previously been dismissed based on insufficient

evidence, or created real possibility that this occurred.  Further, if the Court were to apply the intermediate standard of review explained in *Howard v. Bouchard, supra*, he must show that the state court of appeals' decision finding this claim to be without merit, even if that decision articulated neither the precise claim advanced here nor any reason for rejecting it, is, after an independent review of the record, contradictory to "the strictures of AEDPA." *Howard*, 405 F.3d at 468.  For the following reasons, the Court concludes that petitioner has met this standard.

It is true that petitioner cannot definitively demonstrate that the jury convicted him based on evidence relating to one or both of the dismissed rape counts.  As the discussion above illustrates, it is impossible to know on exactly what basis the jury found him guilty, beyond the fact that the jury was instructed to confine its deliberation to incidents which occurred in or reasonably near the charged time frame of February, 2005 to February 22, 2006.  Thus, it is certainly possible that the jury found petitioner guilty based on the evidence surrounding the occurrence of February 23, 2006.  But such a possibility does not negate a double jeopardy claim like petitioner's.  Rather, as *Valentine* points out, it is not the petitioner's burden to show that he was actually convicted of a crime for which he had previously been acquitted.  In order to make out this type of double jeopardy violation, a petitioner need show only that there was a "very real possibility" that such a conviction was entered.  *Id*. at 634.  This standard is consistent with the concept that, once a constitutional error has been shown, a petitioner is entitled to relief if he or she can demonstrate that the error had a substantial and injurious effect on the outcome of the trial.

*See Brecht v. Abrahamson*, 507 U.S. 619 (1993).  To determine if the petitioner has met this standard, a full review of the trial proceedings is necessary.

If it were clear from the trial transcript that the jury clearly understood that it was to consider only the February 23, 2006 incident in deciding petitioner's guilt or innocence on the single rape charge submitted for decision, any error concerning the judge's submission of a count containing a broader time frame and failure specifically to instruct the jury as to what evidence it could consider would have been harmless under the *Brecht* standard.  The way in which the prosecutor structured his closing argument might, if standing alone, persuade the Court that the jury understood its task correctly.  However, the totality of the state court record paints a quite different picture.  After petitioner testified about other acts of intercourse with Bonnie Parker, presumably because he believed, after the judge's ruling, that these acts could not form the basis for a rape conviction and because he needed some way to explain the presence of his semen on the living room chair, the prosecutor engaged in a lengthy and pointed cross-examination about those specific acts and Ms. Parker's ability or inability to have consented to them.  No one - not the prosecutor, the judge, or defense counsel - advised the jury that the presence or absence of consent as to these acts was not relevant, or was only tangentially relevant, to the question of (1) whether petitioner engaged in sexual relations with Bonnie Parker on February 23, 2006, and (2) whether she lacked the capacity to consent at that time.  This was, in itself, error, because it represented post-acquittal proceedings going to the elements of the dismissed charges.  *Cf. United States v. Martin Linen Supply Co., supra.*

35

Further, the jury found that petitioner did not use force with respect to the count of rape upon which he was convicted.  Yet the only evidence about how the February 23, 2006 event occurred, which was contained in Ms. Parker's statement to the nurse, was to the effect that he did force himself on her, and that she fought him.  The medical examination which followed that event was also consistent with forcible rape.  Given the jury's finding that no force was used, it is substantially likely that the jury convicted petitioner based on one of the encounters which he described, because there was  no evidence that force was used on any of those occasions.  Thus, the Court concludes that there is a "very real possibility" that the jury did convict petitioner on a charge for which he had already been acquitted, and that his double jeopardy rights were violated.  The existence of this "very real possibility" means that to deny petitioner relief on this claim, and on this record, would be unreasonable in light of *Valentine* and the long-standing double jeopardy principles which underlie that decision.

As petitioner points out, in an unpublished decision, the Sixth Circuit Court of Appeals reached a similar result based on very similar circumstances.  In *Isaac v. Grider*, 2000 WL 571959 (6th Cir. May 4, 2000), the court vacated convictions on duplicate counts of sexual activity because, as here, the state trial court had directed verdicts on some of the counts, but, also as occurred in the instant case, "[t]he jury instructions did not advise the jury as to the court's directed verdicts, and the instructions did not limit the jury's consideration of the evidence relating to [the dismissed counts]").  *Id*. at *5.  That failure led to the same problem that occurred here, namely that "the identical charges introduced the

risk of double jeopardy and, indeed, may have already resulted in double jeopardy in *this prosecution ....*" *Id*.  This type of double jeopardy violation supports the issuance of a writ conditioned on the State's decision to retry petitioner on the one rape count which is based on the February 23, 2006 incident.  Further, the same reasoning applies to the three identically-worded gross sexual imposition counts, where the trial judge apparently concluded that the supporting evidence was limited to events occurring on or about February 23, 2006, but failed to so instruct the jury, and petitioner testified to many incidents in 2005 that could have constituted gross sexual imposition.

The state court's decision did not discuss any of the authorities cited above.  As noted, its conclusion that no double jeopardy violation occurred because the jury could have convicted petitioner based on his own admission of having engaged in sexual intercourse with his mother-in-law actually confirms the possibility that the jury convicted him based upon evidence going only to the dismissed counts.   That determination is clearly contrary to federal law.  Its other conclusion - that there was no double jeopardy violation because only one count of rape was submitted to the jury - fails to take into account how a conviction on even one count can be a double jeopardy violation if the evidence used by the jury to reach its verdict was evidence relating solely to a previously-dismissed charge.  Reliance on either of these rationales, neither of which finds any support in federal case law, is contrary to the way in which this type of double jeopardy claim is properly evaluated.  Consequently, it will be recommended that a conditional writ be granted based on claim two as to petitioner's rape conviction.

Petitioner's conviction on three identically-worded counts of gross sexual imposition presents a different issue.  As to these counts, the trial court did not grant a judgment of acquittal on any of them.  Consequently, the jury's verdict on these counts could not have represented a conviction on a count which had been resolved in petitioner's favor, and that aspect of the Double Jeopardy clause is not implicated.

Petitioner asserts, however, that a different *Valentine* issue is presented.  As discussed above, the major problem in that case was, as the Court of Appeals described, the fact that "Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts" and that "the prosecution did not attempt to lay out the factual bases for forty separate incidents that took place." *Valentine*, 395 F.3d at 632.  Rather, the only differentiation among the multiple incidents, if it could be called that, was the victim's estimate of how many times each type of act took place.  The *Valentine* court reasoned that it was unfair to "permit multiple convictions to stand based solely on a child's numerical estimate." *Id*.

Here, as the trial judge noted in ruling on the motion for judgment of acquittal on the gross sexual imposition counts, the victim's statement to Nurse Mahan provided a basis upon which the jury could convict petitioner for three separate incidents.  Each of those incidents occurred during or near the time frame specified in the indictment.  No one - not a child, and not an incompetent victim - simply estimated the number of incidents.  Thus, although the trial court did not instruct the jury (nor did the prosecutor tell the jury in closing argument) that the basis of the three charges of gross sexual imposition was limited

38

to the three incidents supported by Bonnie Parker's statement, the prosecutor did read that statement to the jury during the portion of his closing argument when he discussed the elements of rape and gross sexual imposition.  The Court concludes that these facts distinguish this case sufficiently from *Valentine* that the state court's refusal to grant relief on this claim cannot be considered unreasonable, nor, even if the Court were to conduct a *de novo* review, would this claim provide any basis for relief.

It is true that, as with the rape counts, petitioner testified to additional conduct that could have constituted gross sexual imposition.  However, unlike the situation with the rape counts, he could not have had a reasonable belief that the jury would not use this evidence to convict him.  No gross sexual imposition count was dismissed.  Had the defense simply rested without presenting evidence, the basis of the jury's verdict on the gross sexual imposition counts would be clear.  Surely, under these circumstances, a defendant may not, by making a voluntary choice to  introduce evidence that would provide the basis for additional convictions for the same offense, or alternative bases for conviction on the existing counts, create a viable claim that his rights were violated because it cannot be determined whether the jury used that additional evidence when it returned a guilty verdict.  Thus, the only *Valentine* claim that provides any basis for habeas corpus relief is the one relating to the two counts of rape upon which a judgment of acquittal was granted.

### VI.  CLAIM THREE

In his third claim, petitioner asserts that the admission of Bonnie Parker's statement

to the nurse that she had been raped by her son-in-law violated his rights under the Confrontation Clause contained in the Sixth Amendment. In particular, he argues that the admission of this statement conflicted with the Supreme Court's recent pronouncements in *Crawford v. Washington*, 541 U.S. 36 (2004) and *Davis v. Washington*, 547 U.S. 813 (2006) concerning the use of testimonial statements made by out-of-court declarants. Respondent denies any Confrontation Clause violation, contending that the state court's determination that the purpose of Ms. Parker's having identified petitioner as her assailant to the nurse was not a testimonial act, so that its admission created no constitutional issues.

The state court's opinion on this issue relied primarily, if not exclusively, on the Ohio Supreme Court's decision in *State v. Stahl*, 111 Ohio St. 3d 186 (2006). *Stahl* held that a statement given to a nurse during a rape examination was not testimonial within the meaning of *Crawford* because it interpreted *Crawford* to restrict testimonial statements to those made with an objectively-determinable expectation that they would be available for later use at trial. It held that statements made to a nurse in the context of a medical examination, even if a police officer was present at the time, were "given to a medical professional in the ordinary course of conducting a medical examination" and that an objective person in the position of the victim would not have believed that the primary purpose of the questions asked during the examination was to elicit statements for later use at trial, especially when similar statements had already been made to the investigating police officer. The court of appeals in petitioner's case essentially concluded that the facts of this case are indistinguishable from the facts in *Stahl*.

Petitioner does not argue that *Stahl* itself represents an unreasonable application of the Confrontation Clause as interpreted in *Crawford*.  Rather, he contends that the facts of this case are distinguishable from *Stahl* because the nurse who examined Bonnie Parker was a S.A.N.E. nurse, and the purpose of her examination was not to gather evidence for medical treatment, but specifically to gather evidence for prosecution.  He points to various facts in the record to support that assertion, including the fact that the consent form signed by Ms. Parker prior to the interview expressly stated that the information would be given to law enforcement for use in prosecution, that the process was described as a forensic, rather than a medical, examination, that Ms. Parker was not suffering from a medical emergency when she submitted to the interview, which took place two days after the alleged rape, and that the results of the examination were not shared with Bonnie Parker's own doctor.  Petitioner also cites to a number of other state court decisions holding that a S.A.N.E. nurse is specifically tasked with gathering evidence for use in criminal prosecutions, and not with providing any medical care to rape victims.

The first question to be answered is whether the state court's application of the Supreme Court's Confrontation Clause jurisprudence was correct.  Largely for the reasons advanced by petitioner, this Court concludes that it probably was not.  The state court was correct in identifying *Stahl* as controlling precedent within the State of Ohio as to the proper interpretation of *Crawford*, but the court of appeals made no effort to distinguish between the type of medical examination involved in *Stahl* and the type of forensic examination and interrogation performed by a S.A.N.E. nurse.  There are facts within this

41

record which distinguish this case from *Stahl*. In particular, Nurse Mahan testified that she was a "forensic nurse" whose job description included "bridging the medical, legal aspects of nursing, meaning the medical with the legal and police departments." (Tr. 217). She described the first stage of her examination of Ms. Parker as a "forensic interview." (Tr. 223). Part of that process involves taking an "assault history." (Tr. 226). The actual medical examination began with what Nurse Mahan described as the collection of "forensic evidence." (Tr. 228). Evidence collected from that examination is "given to the police to release to the crime lab." (Tr. 229). There was no testimony that Ms. Parker had come to the hospital seeking medical treatment, nor any testimony that providing medical care or treatment was any part of Nurse Mahan's role.

The trial court apparently viewed the issue exclusively as a hearsay question arising under the Ohio Rules of Evidence and admitted the statements on grounds that they had been made for purposes of obtaining medical treatment. (Tr. 223). There was, however, no hearing held on that issue, and, as noted, most of the facts of record point the other way. By failing to acknowledge the difference between the facts of this case, and the facts of *Stahl*, which did involve statements made to a medical professional who was giving the victim medical treatment, and who was not primarily tasked with collecting evidence for later use - or, alternatively, not remanding the case for a hearing on the primary purpose of the interview - the state court of appeals very well may have incorrectly applied both *Crawford* and *Stahl.*

Although not completely dispositive of this issue, it is important to note that many

42

state courts in other jurisdictions have applied the same test adopted in *Stahl* to the S.A.N.E. nurse interview scenario and have concluded that admission of statements made during such an interview violates the Confrontation Clause.  *See, e.g., State v. Miller*, 42 Kan.App. 2d 12, 208 P.3d 774 (2009);  *Hartsfield v. Commonwealth*, 277 S.W. 3d 239 (Ky. 2009);  *State v. Romero,* 141 N.M. 403, 156 P.3d 694 (N.M. 2007); *State v. Cannon*, 254 S.W. 3d 287 (Tenn. 2008); *Medina v. State,* 122 Nev. 346, 143 P.3d 471 (2006); *cf. People v. Spangler*, 285 Mich. App. 136, 148, 774 N.W. 2d 702 , 709 (Mich. App. *2009*) ("A majority of state courts that have considered this issue has determined that a statement made by a sexual abuse victim to a SANE, or similar examiner, were testimonial in nature and barred by the Confrontation Clause").  The same result was reached in *United States v. Gardinier*, 65 M.J. 60 (U.S. Armed Forces 2007).  There are also decisions, such as *Spangler* and *State v. Johnson*, 2005  WL 1952939 (Del. Super. July 19, 2005), which have held that the admission of such statements without holding a hearing to determine whether or not the statements were made for either purposes of medical treatment or for purposes of preserving testimony for trial is reversible error.  Consequently, the weight and persuasiveness of legal authority strongly suggests that the state court of appeals' decision was erroneous.

That does not end this Court's inquiry, however.  Under the AEDPA, as described above, even if a state court decision on an issue of federal constitutional law is erroneous, there is no basis for federal habeas corpus relief unless the decision also represents an unreasonable application of clearly established federal law.  The Court cannot make that determination here.

While *Crawford* changed the law concerning the interplay between the Confrontation Clause and long-recognized exceptions to the hearsay rule, concluding that statements which fall within a hearsay exception are not beyond the reach of the Confrontation Clause if the hearsay statements are "testimonial" in nature, *Crawford* explicitly left open the question of what types of statements, beyond those given at prior judicial proceedings or to police interrogators, could be characterized as "testimonial." *See United States v. Hadley*, 431 F.3d 484, 495 (6th Cir. 2005). There do not appear to be any cases from the Sixth Circuit Court of Appeals or district courts within the Sixth Circuit dealing with statements given to forensic nurses. The closest case which the Court's research can locate is *Rice v. Hudson*, 2009 WL 2410436 (N.D. Ohio August 4, 2009), a case in which the court held that statements about a rape made to a social worker were not testimonial because the statements were made for purposes of obtaining proper psychological treatment. Further, there are few, if any, cases from any federal courts on this issue. The uncertainty in the law in this area is illustrated by this statement from *Hernandez v. Schuetzle*, 2009 WL 395781, *31 (D.N.D. February 17, 2009): "Consequently, there is the possibility that the Supreme Court could decide, as some lower courts already have or suggested, that statements made by a sexual assault victim during a medical examination may be deemed testimonial when made with the understanding that the statements might get the perpetrator in trouble, regardless of any law enforcement involvement in procuring the statements. And, this may be particularly true for the portions of the statements naming the perpetrator." Absent such a decision, or a more fully-developed body of case law, so holding, the state court's

determination in this case that no Confrontation Clause violation occurred cannot be deemed unreasonable. Thus, petitioner is not entitled to relief based on his third claim.

## VII. CLAIM FOUR

Petitioner's fourth claim raises multiple instances of alleged prosecutorial misconduct, including the prosecutor's failure to narrow the time frame involved in all of the counts of the indictment, the failure to dismiss two of the rape counts prior to trial, the eliciting of inadmissable hearsay statements from Nurse Mahan, allowing Detective Waugh to vouch for Ms. Parker's credibility and then improperly emphasizing this evidence in closing argument, questioning petitioner about his motives for lying to police, alluding to rapes allegedly occurring other than on February 23, 2006 while knowing there would be no evidence admitted to support these charges, and reserving most of the closing argument for rebuttal.

The state court of appeals ruled on this issue in this way:

{¶ 78} In his Fourth Assignment of Error, appellant contends that prosecutorial misconduct resulted in reversible error. We disagree.

{¶ 79} The prosecutor's duty in a criminal trial is two-fold. The prosecutor is to present the case for the State as its advocate and the prosecutor is responsible to ensure that an accused receives a fair trial. *Berger v. U.S.* (1935), 295 U.S. 78; *State v. Staten* (1984), 14 Ohio App.3d 197.

{¶ 80} Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394; *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768. The touchstone of analysis is "the fairness of the trial, not the culpability of the prosecutor." *State v. Underwood* (1991), 73 Ohio App.3d 834, 840-841, 598 N.E.2d 822, 826, *citing Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87-88. An appellate court should also consider whether the misconduct was

45

an isolated incident in an otherwise properly tried case. *State v. Keenan* (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203, 209-210; *Darden v. Wainwright* (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.

{¶ 81} Appellant first argues that the State committed misconduct because the prosecutor failed to narrow the time frame of the incidents alleged in the indictment and failed to dismiss the unprovable counts.

{¶ 82} To the extent that appellant argues the indictment was defective, he waived that argument by failing to raise it before trial. See Crim. R. 12(C)(2); *State v. Schultz* (1917), 96 Ohio St. 114, 117 N.E. 30; *State v. Hardy*, Cuyahoga App. No. 82620, 2004-Ohio-56; *State v. Blalock*, Cuyahoga App. Nos. 80419 and 80420, 2002-Ohio-4580; *State v. Kenney* (May 10, 2000), 5th Dist. No. CA93-480A; *State v. Avery* (1998), 26 Ohio App.3d 36, 709 N.E.2d 875; *State v. Biros* (1997), 78 Ohio St.3d 426, 436, 678 N .E.2d 891, 901-902, *citing State v. Joseph* (1995), 73 Ohio St.3d 450, 455, 653 N.E.2d 285, 290-291; and *State v. Mills* (1992), 62 Ohio St.3d 357, 363, 582 N.E.2d 972, 980 (Under Crim. R. 12(B) and 12(G), alleged defects in an indictment must be asserted before trial or they are waived"); *see, also, State v. Williams* (1977), 51 Ohio St.2d 112, 117, 98, 101, 364 N.E.2d 1364, 1367-1368, death penalty vacated (1977), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156.

{¶ 83} Specificity as to the time and date of an offense is not required in an indictment. Under R.C. 2941.03: "an indictment or information is sufficient if it can be understood therefrom: * * *(E) That the offense was committed at some time prior to the time of filing of the indictment * * *." An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The State is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment. *State v. Adams*, 5th Dist. No. 02-CA-00043, 2002-Ohio-5953 at ¶ 8.

{¶ 84} Impreciseness and inexactitude of the temporal evidence at trial is not "per se impermissible or necessarily fatal to a prosecution." *State v. Robinette* (Feb. 27, 1987), 5th Dist. No. CA-652. The question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend him. *State v. Sellards* (1985), 17 Ohio St.3d 169, 478 N.E.2d 781; *State v. Gingell* (1982), 7 Ohio App.3d 364, 368, 455 N.E.2d 1066, 1071; *State v. Kinney* (1987), 35 Ohio App.3d 84, 519 N.E.2d 1386. Appellant has not argued or alleged that the inexactitude prejudiced his ability to defend himself at trial. Further, the trial court granted appellant's motion to dismiss two counts of rape before the case was submitted to the jury.

46

{¶ 85} Appellant next argues that the State impermissibly elicited hearsay statements and opinions regarding the credibility of the victim from Detective Andy Waugh.

{¶ 86} Evid.R. 103(A) provides that error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected and, if the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent. In the case at bar, counsel did not object at trial.

{¶ 87} Accordingly, our review of the alleged error must proceed under the plain error rule of Crim. R. 52(B). *State v. Joseph* (1995), 73 Ohio St.3d 450, 455, 653 N.E.2d 285, 291. Crim .R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.

{¶ 88} In *U.S. v. Dominguez Benitez* (June 14, 2004), 542 U.S. 74, 124 S.Ct. 2333, 159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. *See Arizona v. Fulminante*, 499 U.S. 279, 309-310 (1991) (giving examples). "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as 'error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. *See Kotteakos v. United States*, 328 U.S. 750 (1946). To affect "substantial rights," see 28 U.S.C. § 2111, an error must have "substantial and injurious effect or influence in determining the ... verdict." *Kotteakos, supra*, at 776." 124 S.Ct. at 2339. *See, also, State v. Barnes* (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. *See, also, State v. Fisher*, 99 Ohio St.3d 127, 129, 2003-Ohio-2761 at ¶ 7, 789 N.E.2d 222, 224-225. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano* (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; *State v. Perry* (2004), 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.' " *State v. Barnes*

(2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, *quoting State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. *Perry, supra*, at 118, 802 N.E.2d at 646.

{¶ 89} In the case at bar, the Detective testified that Ms. Parker was descriptive, consistent and emotional in her recitation of the attacks. She did not appear to have a motivation to fabricate the allegation. We find no error as this is not vouching for the victim's credibility. The Detective simply gave his impressions of Bonnie based upon his experience in interviewing victim's of crime.

{¶ 90} The detective's testimony that the victim's medical records were consistent with her statements was harmless error, if error at all. The jury had both the medical records and the statements of Ms. Parker. The jury also had the testimony of the forensic nurse Kailey Mahan who gave the same opinion. Accordingly, the detective's testimony was merely cumulative. The jury was free to draw its own conclusions concerning any inconsistencies.

{¶ 91} Appellant's arguments concerning how his semen was deposited upon the chair in the victim's living room are feckless in light of his admission during the trial that he masturbated upon the chair. (1T. at 312).

{¶ 92} Appellant next argues that the prosecutor committed misconduct during his cross-examination. Specifically asking whether he had "a lot of reasons to lie" and whether he was denying the allegations because his relatives were present in the courtroom as spectators. This was fair comment by the State. On direct examination appellant's attorney asked appellant if he had any reason to lie. (1T. at 314).

{¶ 93} Appellant next argues that the prosecutor committed misconduct during closing argument.

{¶ 94} A prosecutor is entitled to a certain degree of latitude in closing arguments. *State v. Liberatore* (1982), 69 Ohio St.2d 583, 589, 433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. *State v. Maurer* (1984), 15 Ohio St.3d 239, 269, 473 N.E.2d 768. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge*, 75 Ohio St.3d 136, 141, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431.

{¶ 95} In *State v. Draughn* (1992), 76 Ohio App.3d 666, 602 N.E.2d 790, this Court stated: "[i]n opening closing argument the prosecutor is limited to comments upon the evidence, and the logical and appropriate conclusions to be drawn therefrom. Thus, he can bolster his own witnesses, and conclude by saying, in effect, 'The evidence supports the conclusion that these witnesses are telling the truth.' He cannot say, 'I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. *See State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room. Further, it is inappropriate for the prosecutor to vouch for the integrity of his witnesses. *Id.*

{¶ 96} "As to the defense witnesses, including the defendant, the prosecutor may comment upon the testimony, and suggest the conclusions to be drawn therefrom. He can say, 'The evidence supports the conclusion that the defendant is lying, is not telling the truth, is scheming, has ulterior motives, including his own hide, for not telling the truth.' *See State v. Strobel* (1988), 51 Ohio App.3d 31, 554 N.E.2d 916. He may not say, 'I believe the defendant is lying,' for the same reasons as above.

{¶ 97} "In his rebuttal argument, the prosecutor may argue that the evidence does not support the conclusion postulated by defense counsel. He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight.

{¶ 98} "Generally the credibility of various witnesses will now have been put in issue by the argument of the defense. Considerable additional latitude is due the prosecutor at this juncture, either on fair play grounds or because the comments are invited by the defense. The prosecutor should be allowed to go as far as defense counsel. Thus, if the defense accuses witnesses of lying, the prosecutor should have the same right.

{¶ 99} "However, the prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case. *United States v. Solivan*

(C.A.6, 1991), 937 F.2d 1146". *Id*. at 670-71, 602 N.E.2d at 793.

{¶ 100} Appellant first contends that the prosecutor argued appellant committed multiple sexual assaults during the period alleged in the indictment. The jury convicted appellant of one count of rape and three counts of gross sexual imposition. Accordingly, these comments were correct.

{¶ 101} Appellant next argues that the prosecutor suggested that he was aware of additional counts of rape not presented because of the incompetency of the victim. The trial court informed the jury prior to the commencement of trial that appellant was charged with three counts of rape. (1T. at 15-16). Appellant himself testified that he had sexual intercourse with Ms. Parker on three separate occasions. Accordingly, any error was harmless beyond a reasonable doubt.

{¶ 102} We find no error plain or otherwise. No misconduct occurred because of the prosecutor's comments. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comments not been made on the part of the prosecution. *State v. Benge*, 75 Ohio St.3d 136, 141, 1996-Ohio-227.

{¶ 103} In the circumstances of the case, no prejudice amounting to a denial of constitutional due process was shown.

{¶ 104} Appellant's Fourth Assignment of Error is overruled.

*State v. Dorsey,* 2008 WL 2571851, *12-16.

Respondent notes that the state court held that many of the alleged instances of prosecutorial misconduct were procedurally defaulted because petitioner's counsel raised no objection to them at trial.  This argument is not, however, presented in any great detail, and the thrust of respondent's argument is that there is no merit to any of these claims. Petitioner seeks to excuse any procedural default on grounds of ineffective assistance of counsel.  Because the Court finds no merit in this claim, it is unnecessary to consider that issue here.

50

As this Court explained in *Sowell v. Collins*, 557 F.Supp. 2d 843, 911 (S.D. Ohio 2008),

> The appropriate standard of review for claims of prosecutorial misconduct on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (*citing Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). For prosecutorial misconduct to rise to the level of a constitutional violation, the conduct of the prosecutor must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir.2006) (quoting *Donnelly*, 416 U.S. at 643, 94 S.Ct. 1868); *see also Darden*, 477 U.S. at 181, 106 S.Ct. 2464. Thus, "Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir.2000).
>
> When analyzing a claim of prosecutorial misconduct, a federal court must first determine whether the challenged statements were improper. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir.2000). If improper, the court must examine whether the statements were so flagrant as to constitute a denial of due process and warrant the granting of a writ. Even if the prosecution's conduct was improper, or even "universally condemned," a federal court can only reverse a conviction or sentence if the statements were so flagrant as to render the entire trial fundamentally unfair. *See e.g., Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir.2006). A court makes that determination by considering the following four factors:  (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant.  *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.2005); *see also Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir.2003). Relief will not be granted unless the conduct of the prosecutor "likely had a bearing on the outcome of the trial...." *Byrd,* 209 F.3d at 530.

Addressing the alleged instances of prosecutorial misconduct in the same order as petitioner addresses them in the traverse, the Court first addresses the claim that the prosecutor committed misconduct by procuring an indictment that was vague as to the time of the alleged rapes or sexual conduct when he knew at least one of the dates, by

failing to cure this problem in the bill of particulars, and by failing to dismiss two of the rape counts after it became apparent that Bonnie Parker would be unable to testify at trial.

To a great extent, should the Court ultimately adopt this Report and Recommendation, this claim (and many other portions of the claims of prosecutorial misconduct and ineffective assistance of counsel) will be moot. The only relief which would reasonably be available on either of these claims would be a new trial, and that is the same relief which would be ordered on petitioner's second claim. Further, a second trial at which the prosecution must specify the date of the alleged rape would cure any issues regarding lack of specificity in the indictment or the bill of particulars. Moreover, the fact that the other two rape counts were dismissed by the trial judge during the first trial will necessarily resolve any issue about whether the prosecutor should have moved to dismiss the rape counts not involving the February 23, 2006 incident prior to that trial. Finally, if the District Judge does not adopt the recommendation to order a new trial, the matter can be remanded to the undersigned for further consideration of this claim. Nevertheless, the Court will examine the merits of at least some portions of this claim.

The only federal case which petitioner cites in support of the first portion of his prosecutorial misconduct claim is *United States v. Adkinson*, 135 F.3d 1363 (11th Cir. 1998). The facts of that case are so far removed from what occurred here, however, that it has little persuasive value. There, the prosecutors intentionally indicted the defendants for a course of conduct that, under the law of that circuit, was not criminal, hoping that an *en banc* review of a prior decision would vindicate the government's theory of the case before the

trial concluded.  After spending four months introducing evidence of the "non-crime," the government conceded the issue and the charge was dropped.  The defendants were convicted of other charges after the trial court declined, despite its earlier indication that it would do so, to grant a mistrial.  These egregious circumstances led the Court of Appeals to determine that due process had been violated.

Here, the lack of specificity in the indictment resulted at least in part from the victim's inability to provide dates when the alleged rapes occurred.  Further, it is clear from the prosecution's argument in response to petitioner's motion for judgment of acquittal that, even after Bonnie Parker was deemed incompetent to testify, the prosecution believed that her statement that her son-in-law had been "doing it to her" for "a while" was enough to permit multiple rape counts to go to the jury.  The fact that the trial judge overruled this argument does not, by itself, demonstrate any misconduct on the prosecutor's part.  Certainly, it was not unreasonable for the court of appeals to find that these actions did not result in an inherently unfair trial, and petitioner has cited no authority which would support the opposite conclusion.

The next portion of this claim deals with the testimony elicited from Detective Waugh.  Petitioner asserts that the prosecutor violated a pre-trial agreement concerning what hearsay statements of Bonnie Parker's would be introduced, and that they also allowed the witness to bolster her credibility by alluding to facts which were never properly introduced into evidence.  Petitioner also asserts that these statements were admitted in violation of *Craword*, although no *Crawford* claim was ever raised concerning

Detective Waugh's testimony.

There was an extensive colloquy among the lawyers and the trial judge just prior to the court's opening instructions to the jury. (Tr. 57-64). Although a number of hearsay issues were addressed, any potential hearsay statements that might be contained within Detective Waugh's testimony were not addressed. Some of the issues were resolved during the conference, but others were left for resolution by way of objection should certain witnesses proffer hearsay testimony. There was no representation by the prosecutor that no other witness might be asked about, or might volunteer, other hearsay statements. Contrary to petitioner's representation, this colloquy cannot be read as a commitment on the part of the prosecutor to restrict his questioning of Detective Waugh in any way. Thus, there is simply no factual support for the claim that the prosecutor engaged in misconduct by breaching any pretrial agreement he made concerning the detective's anticipated testimony.

The more significant issue is whether the prosecutor engaged in prejudicial misconduct by having Detective Waugh testify, at least indirectly, about hearsay statements made by Bonnie Parker and about his views concerning her credibility. Without quoting the entirety of his testimony here, which was fairly extensive, it is fair to say that on direct examination he did give some answers to which objection could have been made, including testifying that Ms. Parker's statements (which he did not repeat) and emotional behavior were consistent with "the details she was sharing with" him, (Tr. 170); that he had no concerns about her having been "straight" with him, (Tr. 171); that during the interview,

petitioner's name came up as a suspect, *id.*; and that physical evidence, such as DNA evidence and the medical records, were consistent with her statements. (Tr. 191). On redirect, he also testified to the consistency of her statements with medical records and "other statements," (Tr. 206), including statements that there was more than one incident involved and that he was investigating allegations involving "the bedroom," "the chair," and "the bathroom and the shower." (Tr. 207). The last question on redirect asked him if anything found during his investigation was inconsistent with the charge of rape. He responded that there was no inconsistency. (Tr. 210-11). None of this testimony drew an objection from petitioner's trial counsel, and on cross-examination petitioner's counsel asked Detective Waugh whether he believed everything Bonnie had told him (Tr. 199), whether he believed petitioner had raped her, *id.*; and whether he was "absolutely sure that everything Bonnie told [him] was the gospel." (Tr. 200). He stated in response to all these questions that he believed her statements.

Petitioner asserts that the court of appeals dealt with this issue in an unreasonable fashion by concluding, incorrectly, that any error committed in admitting these statements was harmless or that the statements were cumulative of other testimony and evidence when, in fact, they were not. He also argues that the court of appeals completely disregarded the Sixth Circuit Court of Appeals' decision in *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988), which held that it violates the due process clause to allow an investigating officer to testify about the strength of the evidence pointing to the accused's guilt.

*Cooper* involved, among other claims, an assertion that a police officer was

improperly allowed to give "expert" testimony to the effect that the evidence did not link any other potential suspects whose names had been brought up by the defendant to the crime with which the defendant was charged. The Court of Appeals, agreeing with the dissenting justice on the Kentucky Supreme Court, found that the admission of this evidence was error because it constituted an improper opinion that the defendant was guilty, and none of the other potential suspects were. That error, coupled with other errors such as the trial judge's description of the officer as an expert, and the fact that the case was "close," justified the grant of a writ of habeas corpus.

It is important to note here that, first, the legal question before the Court is not the admissibility of the testimony which petitioner brings into question, but the propriety of the prosecutor's asking questions which elicited that testimony. Second, *Cooper* was decided prior to Congress' adoption of the AEDPA (as was the other case cited by petitioner, *Maurer v. Department of Corrections*, 32 F.3d 1286 (8th Cir. 1994)), so the *Cooper* court owed no deference to the state court decision on these issues. Given all of the circumstances, this Court cannot conclude that the state court unreasonably failed to grant petitioner relief on this portion of his prosecutorial misconduct claim.

The Court has been unable to locate a single case decided by the Sixth Circuit Court of Appeals, apart from *Cooper*, where a prosecutor's questioning of a law enforcement officer about the truthfulness of a witness led to the grant of a writ of habeas corpus. In *Mays v. Chandler*, 342 Fed. Appx. 159 (6th Cir. August 18, 2009), the Court of Appeals distinguished *Cooper* and refused to grant a writ even though a law enforcement officer

56

testified both that he believed the story told by the only eyewitness to the crime to the effect that the petitioner had shot the victim, and that he did not believe the petitioner's version of events.  The claim in *Mays* was presented as part of an ineffective assistance of counsel claim, and the Court of Appeals found that the petitioner had not been prejudiced by the testimony, even though it was inadmissible and his counsel should have objected to it, because the witness gave the same testimony at trial, the petitioner told a different story to the jury than he had to the police, and there was other evidence linking the petitioner to the crime.

This case is certainly closer to *Mays* than it is to either *Cooper* or *Maurer*, which was also a case where there was little corroborative evidence of the victim's statement (and in which four different witnesses were asked to vouch for the victim, and their testimony was repeatedly emphasized by the prosecutor in closing argument).  Here, the testimony of Detective Waugh, although objectionable at least in part, was much less damaging to petitioner than the direct admission of Bonnie Parker's statement to the forensic nurse that petitioner had raped her.  The detective's testimony was also much more circumspect on direct examination than it was on cross-examination, when petitioner's own counsel asked him three times, point-blank, if he believed Bonnie Parker's statements about what happened.  Further, petitioner did tell a very different story to the jury than he told to police.  Finally, there was more evidence linking petitioner to having engaged in sexual conduct with Bonnie Parker than just Detective Waugh's statements.  There was physical evidence, including the presence of semen on the chair in Bonnie Parker's residence and

the results of the physical examination performed by the nurse, and there was other testimony besides that of Detective Waugh concerning the February 23, 2006 incident. Taken together, there is little chance that the testimony at issue caused petitioner to be denied a fundamentally fair trail, and even less chance that the state court of appeals' conclusion to that effect can be deemed unreasonable. *See, e.g., Lewis v. Russell*, 2000 WL 1459451 (S.D. Ohio September 19, 2000) (holding that where such statements were rationally related to the defendant's guilt and there was substantial independent evidence of guilt, the improper admission of those statements was harmless error).

The final instances of alleged prosecutorial misconduct fare no better. Petitioner claims both that the prosecutor engaged in an unfair cross-examination of him and committed gross misconduct during the closing argument. The only alleged unfair questioning was the prosecutor's suggestion that petitioner did not want to admit guilt in front of several of his relatives, who were present in the courtroom. Petitioner has cited no case law in support of this claim, and it is not unreasonable to conclude that this isolated line of questioning had no impact on the question of whether petitioner received a fundamentally fair trial.

As far as the prosecutor's summation is concerned, petitioner points to one comment which reiterated Detective Waugh's view of Bonnie Parker's credibility; the prosecutor's explanation to the jury of why two of the rape counts were dismissed; one reference to the notion that petitioner committed more than one rape; and the prosecutor's decision to reserve most of his argument for rebuttal. Again, it is not unreasonable to conclude that

none of these instances of alleged misconduct, even if all of them were deemed improper, affected the fairness of the trial.  Guided by the four considerations set out in *Bates v. Bell*, 402 F.3d 635 (6th Cir. 2005), the Court cannot find that these comments were very likely to have misled the jury or to have prejudiced the defendant; that they were more than isolated remarks; that they were made deliberately in disregard either of an admonition from the court or despite objections from defense counsel (there were neither here); or that the case was otherwise so weak that these comments could have made the difference between conviction and acquittal.  Further, although the prosecutor may have exceeded the usual scope of rebuttal argument, defense counsel neither objected nor asked for surrebuttal. Again, the test for determining if such conduct constitutes reversible error is whether the tactics employed by the prosecutor were "so egregious as to render the trial fundamentally unfair." *Jackson v. Houk*, 2008 WL 1946790, *34 (N.D. Ohio May 1, 2008).  That was not the case here.  Therefore, the state court of appeals did not act unreasonably in determining that any error that occurred during the prosecutor's closing argument was harmless.

## VIII.  CLAIM FIVE

In his fifth and final claim, petitioner asserts that his trial counsel performed ineffectively in a number of ways, and that the cumulative effect of this substandard performance prejudiced his defense.  He contends that the court of appeals' decision to the contrary represents a misapplication of the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984).

The right to counsel guaranteed by the Sixth Amendment is the right to the effective

assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for

demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second,
> the defendant must show that deficient performance
> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance

must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties

inherent in making the evaluation, a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Id* . To

establish the second prong of the *Strickland* test, prejudice, a Petitioner must demonstrate

that there is a reasonable probability that, but for counsel's errors, the result of the

proceedings would have been different. *Id*. at 694. "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* Because petitioner must

satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel,

should the court determine that petitioner has failed to satisfy one prong, it need not

consider the other. *Id.* at 697.

The state court of appeals ruled on this claim as follows:

{¶ 105} In his Fifth Assignment of Error, appellant argues that he was denied
effective assistance of trial counsel. We disagree.

60

{¶ 106} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St .3d 136.

{¶ 107} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley*, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id*.

{¶ 108} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable. *Strickland* 466 U.S. at 687; 694, 104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*.; *Bradley*, *supra* at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland, supra; Bradley, supra.*

{¶ 109} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, *quoting Strickland* at 697. Accordingly, we will direct our attention to the second prong of the *Strickland* test.

{¶ 110} Appellant first argues that his trial attorney's failures to raise in the trial court the same issues and arguments that he now presents on appeal in his previous four Assignments of Error rendered his performance ineffective. Since we have found no grounds for reversal of his convictions in any of appellant's previous four assignments of error, we obviously do not consider his counsel ineffective in this regard.

{¶ 111} Appellant next argues that his trial counsel rendered constitutionally

deficient representation when he elicited damaging testimony during the cross-examination of the State's witnesses.

{¶ 112} Appellant argues that Pam Parker initially stated that she never spoke to her mother about him. (1T. at 150). Upon further questioning by defense counsel, the witness stated that she believed her mother's allegations in this case based on what she had heard from other people, including a social worker and neighbors who had spoken to her mother. (1T. at 151-152). However, a review of the record establishes that on direct examination by the prosecuting attorney Pam Parker testified that she was familiar with the facts of the case. When asked how she became familiar, Pam Parker testified that Bonnie had told her many times. (1T. at 147). When asked on direct examination if she initially believed her mother, Pam Parker testified that she did not because "I wouldn't believe my brother-in-law would do something like that because he was part of our family." ( Id. at 147).

{¶ 113} Appellant next cites the testimony of Detective Waugh as set forth in his Fourth Assignment of Error, supra in support of his claim that trial counsel was ineffective. Because we have found it was not error to admit the testimony of Detective Waugh, we obviously do not consider his counsel ineffective in this regard.

{¶ 114} Appellant next argues that trial counsel was ineffective in asking the forensic nurse her opinion as to whether the sexual activity was the result of a sexual assault. (1T. at 246). He additionally argues that counsel was ineffective in calling appellant's wife as a witness.

{¶ 115} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. *See Strickland*, 466 U.S., at 690, 104 S.Ct. 2052 (counsel is 'strongly presumed' to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.' *Massaro v. United States*, 538 U.S. 500, 505, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. *See Bell, supra*, at 702, 122 S.Ct. 1843; *Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland, supra*, at 689, 104 S.Ct. 2052; *United States v. Cronic*, 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)." *Yarborough v. Gentry* (2003),

540 U.S. 1, 8, 124 S.Ct. 1, 6.

{¶ 116} A decision regarding which defense to pursue at trial is a matter of trial strategy "within the exclusive province of defense counsel to make after consultation with his client." *State v. Murphy*, 91 Ohio St.3d 516, 524, 2001-Ohio-0112. This court can only find that counsel's performance regarding matters of trial strategy is deficient if counsel's strategy was so "outside the realm of legitimate trial strategy so as 'to make ordinary counsel scoff.' " *State v. Woullard*, 158 Ohio App.3d 31, 813 N.E.2d 964, 2004-Ohio-3395, ¶ 39, *quoting State v. Yarber* (1995), 102 Ohio App.3d 185, 188, 656 N.E.2d 1322. Further, the Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189, *citing People v. Miller* (1972), 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089; *State v. Wiley*, 10th Dist. No. 03AP-340, 2004-Ohio-1008 at ¶ 21.

*19 {¶ 117} The Ohio Supreme Court has stated, "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." *State v. Myers* (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217. Furthermore, an attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective assistance of counsel. *See, e.g., State v. Coulter* (1992), 75 Ohio App.3d 219.

{¶ 118} None of the instances raised by appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

{¶ 119} Appellant's Fifth Assignment of Error is overruled.

*State v. Dorsey*, 2008 WL 2571851, *17-19.

63

Petitioner first argues that his counsel was ineffective for failing to raise the due process and double jeopardy issues underlying his second claim for habeas corpus relief. Because this Court has found that, ultimately, these claims were addressed on their merits and were not waived for purposes either of appeal or habeas corpus review, any error on the part of counsel in failing to raise an objection at trial may be considered harmless. In any event, this claim is rendered moot by the grant of relief on the second claim.

Next, he asserts that counsel was ineffective for failing to object to Detective Waugh's testimony concerning his belief that Bonnie Parker had been raped, as well as failing to object to the prosecutor's closing argument. The state court found the former claim lacked merit because it had concluded that Detective Waugh's testimony was properly admitted. Its actual conclusion was that the admission of this testimony, even if improper, constituted harmless error. Nevertheless, under the prejudice prong of *Strickland*, if the testimony to which an objection should have been made did not have a substantial impact on the outcome of the trial, petitioner could not have been prejudiced by counsel's failure to object to it. *See, e.g., Moye v. Corcoran*, 668 F.Supp. 2d 523, 542 (S.D.N.Y. 2009) ("Since the admission of this testimony was harmless error, trial counsel's failure to object to it did not prejudice the petitioner"). The same is true with respect to the prosecutor's alleged misconduct during argument, which the state court found not to be improper. This Court has concluded that any improprieties did not rise to the level of denying petitioner a fair trial. Therefore, any failure on the part of trial counsel to object to these arguments cannot have been prejudicial. *See, e.g., Ryan v. Warren*, 2006

64

WL 2073129, *11 (E.D. Mich. 2006) (petitioner must show a probability of a different outcome had the objections to the prosecutor's alleged improper statements been sustained or properly preserved); *see also Zimmer v. McKune*, 87 F.Supp. 2d 1153, 1159 (D. Kan. 2000). The state court's decision on these issues, reaching the same conclusion, is therefore not unreasonable.

Petitioner also claims that his trial counsel was ineffective when he asked questions of three different witnesses, Pam Parker (his sister-in-law), Detective Waugh, and Nurse Mahan, which elicited testimony to the effect that they believed the victim when she said that petitioner had raped her or, in the case of Nurse Mahan, that she believed that the injuries to Bonnie Parker were sustained as a result of a sexual assault. The latter questioning was clearly harmless, because the jury concluded that petitioner did not force Bonnie Parker to have sex with him. The other two instances may have been ill-advised, but Detective Waugh had already stated his opinion about Bonnie Parker's credibility on direct examination, and counsel could have concluded that bringing out the detective's firm belief in the truthfulness of allegations made by an incompetent witness who suffered from dementia was effective cross-examination. At the very least, it was the type of strategic decision that courts are not to second-guess. Pam Parker testified on direct examination that she did not believe her mother when she first alleged that petitioner had raped her. Asking her on cross-examination whether, in light of her mother's mental condition, she believed everything her mother told her (and getting "No" as part of the response, see Tr. 152) was neither a choice that lacked a strategic basis nor something that

was so prejudicial as to affect, or likely affect, the outcome of the trial.  Again, the state court did not unreasonably apply the *Strickland* test for prejudice to these alleged instances of ineffective assistance of counsel.

Petitioner alleges that counsel had no reasonable basis for calling his wife to the witness stand.  He does not allege, however, that her testimony prejudiced his defense, but simply that it "had no potential to contribute to the defense strategy ...." *See Traverse*, at 65. Therefore, even if counsel was not pursuing any particular strategy in calling petitioner's wife as a witness (and the Court is not convinced that is the case), the state court's conclusion that this choice was not prejudicial is not an unreasonable application of *Strickland.*

Finally, petitioner focuses on his counsel's closing argument, suggesting that counsel made many needless and prejudicial statements throughout the course of the argument and failed to make arguments that should have been made.  Of these alleged instances of ineffective assistance of trial counsel, the only one which merits much discussion is the claim that trial counsel should have advised the jury that the only rape charge the jury could consider was the February 23, 2006 incident.  The Court agrees that someone should have told the jury about the basis of the trial judge's dismissal of the other rape counts, and what issues on the rape charge remained for the jury's consideration.  Because the state court overruled this claim based on its determination (with which this Court disagrees) that there was no double jeopardy problem created by the way in which the case was submitted to the jury, so that counsel could not have been ineffective for failing to raise that issue, the

66

Court is not persuaded that the prejudice prong of *Strickland* was properly applied to this claim.  Nevertheless, the claim rises or falls with petitioner's second claim for relief.  If, contrary to this Court's determination, the state court of appeals reasonably (but erroneously) held that the failure to tell the jury the basis of the rape charge it was considering did not implicate the Double Jeopardy clause, it would also have reasonably rejected the claim that counsel was ineffective for failing to address the issue in closing argument.  Thus, there is no need to make an independent determination on this portion of petitioner's claim.  The balance of his claims about closing argument are clearly without merit.

## IX.  RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that a conditional writ of habeas corpus be **GRANTED** on petitioner's second claim, and that the State of Ohio release the petitioner from custody unless he is retried within ninety days of the issuance of the writ.  It is further **RECOMMENDED** that habeas corpus relief be **DENIED** on the remaining claims.

## X.  PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


/s/ Terence P. Kemp
United States Magistrate Judge