IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD G. DORSEY,

      Petitioner,                          **CASE NO. 2:09-cv-486**
                                            **JUDGE FROST**
**v.**                                   **MAGISTRATE JUDGE KEMP**

ED BANKS, WARDEN,

      Respondent.

<u>OPINION AND ORDER</u>

Petitioner, a state prisoner, filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Magistrate Judge has recommended that a conditional writ be granted on one of Petitioner's claims. Respondent objects to that recommendation, and Petitioner objects to the recommendation that his other grounds for relief be found to be without merit. He also requests that the relief recommended by the Magistrate Judge be converted to an unconditional writ. The Licking County prosecuting attorney has also moved to intervene for the purpose of asserting objections. That motion, which Petitioner opposes, will be denied and the objections filed by the Licking County Prosecuting Attorney will be stricken. For the following reasons, and after a *de novo* review of all of the objections, the Court overrules all pending objections and grants a conditional writ of habeas corpus to petitioner.

## I.  PROCEDURAL HISTORY

The procedural history of this case was accurately summarized in the Report and Recommendation. Petitioner was indicted on six felony counts involving having sexual

contact or engaging in sexual conduct with his mother-in-law, Bonnie Parker. Following a jury trial, Petitioner was found guilty of one count of rape and three counts of gross sexual imposition.  As more fully discussed below, two of the rape counts were dismissed by the state court at the conclusion of the state's case.  As to the counts on which a conviction was obtained, the trial judge sentenced Petitioner to a ten-year term of imprisonment on the rape count and one-year terms of imprisonment on the three gross sexual imposition counts, with all sentences running concurrently.   His conviction was affirmed on appeal, *see State v. Dorsey*, No. 2007-CA-091, 2008 WL 2571851 (Licking Co. App. May 23, 2008) and the Ohio Supreme Court denied review.   Petitioner's federal habeas corpus petition asserts five claims:

> 1.  Petitioner's convictions for one count of rape and three counts of gross sexual imposition of a "substantially impaired" victim are not supported by evidence sufficient to satisfy the Due Process Clause of the Fifth and Fourteenth Amendments.

> 2.   Lack of differentiation between the counts of the indictment, an ambiguous partial-acquittal ruling, and overbroad jury instructions deprived Petitioner of his Fifth and Fourteenth Amendment right to adequate notice of the charges, and the ability to prepare a defense and protect himself against double jeopardy.

> 3.  The admission of the alleged victim's testimonial statements made during a forensic interview accusing Petitioner of sexual assault violated his Sixth and Fourteenth Amendment right to confront and cross-examine his accuser.

> 4.  Repeated instances of prosecutorial misconduct and overreaching denied Petitioner his right to due process and a fundamentally fair jury trial under the Fifth, Sixth and Fourteenth Amendments.

> 5.  Trial counsel's deficient performance denied Petitioner his Sixth and Fourteenth Amendment right to the effective assistance of counsel.

2

The Report and Recommendation found the second claim to be meritorious and recommended that relief in the form of a conditional writ  be granted on that claim.

## II.  THE MOTION TO INTERVENE

After the Report and Recommendation was issued, the Licking County Prosecuting Attorney moved to intervene in this case for the purpose of filing objections.  Although, by the time the motion was filed, Respondent had already objected to the proposed grant of relief, the prosecuting attorney argued that because his office will have to conduct any retrial of Petitioner, he has an interest in the case, and that he wishes to advance arguments not made by the Ohio Attorney General's Office on behalf of Respondent. Respondent has not objected to the motion, but petitioner has, pointing out that the prosecuting attorney is not a proper party to a habeas corpus proceeding and that the Ohio Attorney General is competent to address the issues raised by the petition and the Report and Recommendation.

The prosecuting attorney cites to a single case as authority for his motion.  That case, *D'Amborsio v. Bagley,* 619 F. Supp. 2d 428 (N.D. Ohio 2009), granted the request of the Cuyahoga County prosecutor to intervene in a habeas corpus action.  The request was not opposed by any party, however, and appears to have been granted for the limited purpose of allowing the prosecutor to argue for an extension of the date by which the petitioner was to be retried following the grant of a writ.  Thus, that case has little precedential value.

It is not entirely clear that Fed. R. Civ. P. 24, under which the county prosecutor seeks to intervene, should be applied in habeas corpus proceedings.  Rule 12 of the Rules

Governing Section 2254 Cases in the United States District Courts provides that the Federal Rules of Civil Procedure may be applied in habeas cases "to the extent that they are not inconsistent with any statutory provisions and these rules . . . . ."  Rule 2(a) provides that the state officer who has custody of a petitioner must be named as a respondent. It says nothing about other parties beyond the petitioner and the respondent. Because a number of courts (*see, e.g., Saldano v. Roach,* 363 F.3d 545 (5th Cir. 2004); *Rodriguez v. Ridge*, 290 F. Supp. 2d 1153 (C.D. Cal. 2003)) have analyzed a request to intervene in a habeas corpus action under Rule 24, however, this Court will do likewise.

The *Saldano* decision is instructive in this regard.  There, the court, in determining that a district attorney should not be allowed to intervene in a habeas corpus case, cited to Texas law that, like Ohio law, mandates representation of the State by the Attorney General's office.  The court concluded that the State of Texas was the real party in interest in a habeas corpus proceeding and that only the Attorney General was allowed to represent that interest.  Thus, the district attorney had no legal interest in the case even if the burden of retrial were to fall on his shoulders.  Even if that were not the case, the court held that the district attorney had not demonstrated that the Attorney General was not capable of adequately representing his interests, so that the denial of intervention was justifiable on that ground as well.

The same factors apply equally in this case.  It is the job of the Ohio Attorney General to represent the State of Ohio in habeas corpus proceedings where a petitioner is in state custody.   *See* Ohio Rev. Code § 109.02.  There has been no showing that the

Attorney General cannot discharge that duty effectively here. As Judge Zouhary observed in *McDonald v. Warden*, Case No. 3:08 CV 1718 (N.D. Ohio November 24, 2009), an order in which a similar motion to intervene filed by the Erie County prosecuting attorney was denied, the basis of the motion to intervene was to permit the prosecutor "to make an argument against habeas relief that the Ohio Attorney General's office is perfectly capable of making." He ruled that this was not an adequate basis for intervention, and this Court agrees. The Attorney General has vigorously defended this case from the outset and has objected to the same recommendation that spurred the filing of the motion to intervene. Thus, both because the Licking County prosecuting attorney has not cognizable legal interest in the outcome of this case and because the Ohio Attorney General is statutorily charged with representing the interest of the State of Ohio in preserving Petitioner's conviction and is able to do so adequately, the Court **DENIES** the motion to intervene. ( Doc. # 25.) It is further ordered that, in accordance with Petitioner's motion to strike (Doc. # 30), the objection filed by the Licking County Prosecuting Attorney (Doc. # 27), which filing was never authorized by the Court, is **STRICKEN**.

### III. PETITIONER'S OBJECTIONS - CLAIMS ONE, THREE, FOUR, AND FIVE

The basic facts of this case are quoted in the Report and Recommendation from the state appellate court opinion. They show that the investigation of Petitioner began when his mother-in-law reported on February 25, 2006, that Petitioner had raped her. Although he initially denied having any sexual contact with Ms. Parker, Petitioner eventually admitted to having had intercourse with her and engaging in other sexual conduct. He

consistently denied any use of force (a contention with which the jury agreed), however, and he also maintained that Ms. Parker, who suffered from dementia, both consented to any sexual acts that occurred and was mentally capable of forming such consent. The jury apparently disagreed with that latter contention and found Petitioner guilty of violating a statute that criminalizes both forcible rape and engaging in sexual conduct with someone whose "ability to resist or consent is substantially impaired because of a mental or physical condition . . . ." Ohio Rev. Code § 2907.02(A)(1).

In his first, third, fourth, and fifth grounds for relief, Petitioner argues that the evidence was insufficient to support a conviction, that his Sixth Amendment right to confront the witnesses against him was violated by the admission of certain hearsay testimony, that the prosecutor was guilty of overreaching, and that his own counsel was constitutionally ineffective. The Report and Recommendation analyzed these claims in light of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Each of these claims was found wanting under this standard of review.

## A.  CLAIM ONE

Petitioner's first claim raises the issue of whether the evidence presented in the state court trial was sufficient to support any of the four convictions.  The state courts decided that there was enough evidence before the jury to sustain these four convictions, and the Magistrate Judge found that this decision was not an unreasonable application of the federal constitutional standard found in *Jackson v. Virginia*, 443 U.S. 307 (1979).

In his objections, Petitioner continues to argue that Bonnie Parker's statement to the nurse who examined her for rape, and particularly her statement that she attempted to resist Petitioner's effort to have sexual intercourse with her, is fatally inconsistent with the state's theory - apparently accepted by the jury – that she lacked the capacity to consent. In addition to the authority cited in his petition and traverse, Petitioner places great weight on a decision from a Kansas appellate court, *State v. Ice*, 997 P.2d 737 (2000), which held that an individual who could understand the sexual nature of the proposed act and could understand that she had the right not to participate in it necessarily had the ability to consent.  He also argues that the case relied on by the Ohio appellate court, *State v. Novak*, No. 2003-L-077, 2005 WL 336337 (Lake Co. App. Feb. 11, 2005), is distinguishable because the victim in that case, unlike Ms. Parker, was sexually inexperienced and was unable to comprehend the sexual nature of the defendant's conduct.

Decisions from other state courts are not, of course, dispositive as to issues of Ohio law.  Here, despite Petitioner's efforts to distinguish *Novak*, that case clearly held that simply because a victim may possess the ability to resist sexual contact, the same victim

7

does not necessarily have the ability to consent to it.  The court of appeals in Petitioner's case reached the same conclusion about Ohio law, and this Court cannot second-guess that conclusion absent some indication that the Ohio Supreme Court would refuse to adopt that construction.  In fact, in this case, the Ohio Supreme Court chose not to review the appellate court's conclusion.

Petitioner points out that there is language in a 1924 decision from the Ohio Supreme Court, *State v. Schwab*, 109 Ohio St. 532 (1924), which could be used as the basis of a contrary argument.  The holding of that case, however, does not conflict with the state appellate court's holding in Petitioner's case.  For all of these reasons, the Court declines to adopt Petitioner's proposed reading of Ohio law – namely,  that a victim who, based on the evidence, may understand that a sexual act is being perpetrated on her and has the ability to put up some resistance cannot also be mentally unable to consent to that act.

The court of appeals concluded that there was evidence from which a reasonable jury could have found that Bonnie Parker lacked the ability to consent.  In his objections, Petitioner specifically disavows any intent to ask this Court to weigh that evidence or resolve issues of witness credibility.  For the same reasons relied on by the court of appeals and the Report and Recommendation, this Court concludes that there was evidence introduced at Petitioner's trial that, if believed, allowed a reasonable jury to find beyond a reasonable doubt that Bonnie Parker's dementia had progressed to the point where she was incapable of consenting to sexual acts with Petitioner.  That being so, the Court agrees that there is no merit to Petitioner's first claim.

## B. CLAIM THREE

In his third claim, Petitioner asserts that the admission of Bonnie Parker's statement to the S.A.N.E. nurse that she had been raped by her son-in-law violated his rights under the Sixth Amendment's Confrontation Clause. The Magistrate Judge concluded that a Confrontation Clause violation probably occurred. Applying the deferential standard of review contained in 28 U.S.C. § 2254(d), however, the Report and Recommendation upheld the state court's decision as being a "not unreasonable" application of clearly established federal law. The basis of that determination was the existence of some uncertainty after the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), as to what is meant by a "testimonial statement" particularly one given other than at a judicial proceeding or in response to police questioning. The Report and Recommendation noted that, at the time the state courts ruled on this issue, there was no precedent in this Circuit concerning statements given to "forensic nurses" and little precedent in other Circuits, so that a decision that such statements were not testimonial was neither contrary to nor an unreasonable application of clearly established law.

In his objections, petitioner cites to a recent Ohio Supreme Court decision, *State v. Arnold*, ___ N.E. 2d ___, 2010 WL 2430965 (June 17, 2010), as evidence of the fact that the law concerning such statements was well established at the time his appeal was decided. *Arnold* held that "[s]tatements made to interviewers at child-advocacy centers that serve primarily a forensic or investigative purpose are testimonial and are inadmissible pursuant to the Confrontation Clause when the declarant is unavailable for cross-examination." *Id.*,

syllabus ¶1.  That holding was, as Petitioner argues, based on a survey of decisions that dealt with the issue of whether such statements, if they were given to a medical practitioner but were not made for the purposes of obtaining therapy or treatment, were testimonial in nature.  Some of those decisions pre-date the appeal in Petitioner's case (although most of them do not).  Nevertheless, the discussion in *Arnold* simply reinforces the point that the law in this area was in a state of development after *Crawford*, and the issue of whether statements made for dual purposes that is, for both investigative and treatment-related reasons can properly be admitted at trial if the declarant subsequently becomes unavailable, was still in flux as of 2010.  The Court agrees with the Magistrate Judge that the state court ruling in Petitioner's case, while incorrect, did not directly contradict any prior authoritative holding concerning the question of whether the statements made by Bonnie Parker to the S.A.N.E. nurse were testimonial in nature, nor did that ruling unreasonably apply *Crawford* or any federal cases interpreting *Crawford* up to that time.  Therefore, Petitioner is not entitled to relief on this claim.  In the event that Petitioner is retried, however, the state courts will be required to apply the law of the Confrontation Clause as it now stands, including the Ohio Supreme Court's decision in *Arnold*, so this issue may well be moot.

## C.  CLAIM FOUR

Petitioner's fourth claim is that the prosecutor conducted himself improperly during the state criminal trial.  He argues that the prosecutor's failure to narrow the time frame involved in all of the counts of the indictment, the failure to dismiss two of the rape counts

10

prior to trial, the eliciting of inadmissable hearsay statements from the S.A.N.E. nurse, allowing Detective Waugh to vouch for Ms. Parker's credibility and then improperly emphasizing this evidence in closing argument, questioning Petitioner about his motives for lying to police, alluding to rapes allegedly occurring other than on February 23, 2006 while knowing there would be no evidence admitted to support these charges, and reserving most of the closing argument for rebuttal, were all improper and deprived him of his constitutional right to a fair trial.   The Report and Recommendation, citing to *Sowell v. Collins*, 557 F.Supp. 2d 843, 911 (S.D. Ohio 2008) and  *Bates v. Bell*, 402 F.3d 635 (6th Cir. 2005), concluded that although some of this conduct may have been improper, as a whole it was not sufficiently prejudicial to deprive Petitioner of the right to a fair trial.

After reviewing the extensive discussion of these alleged instances of prosecutorial misconduct contained in the Report and Recommendation, this Court agrees that the state courts did not act unreasonably in failing to grant Petitioner any relief on this claim.  The Court will not repeat that discussion here, but adopts it in its entirety.

Petitioner does cite to several additional cases in his objections.  First, he points out that in *State v. Sellards,* 17 Ohio St. 3d 169 (1985), the Ohio Supreme Court addressed the duty of a prosecutor to narrow the time frame in an indictment when the prosecutor is able to do so.   *Sellards* held that a prosecutor must supply this information in response to a request for a bill of particulars.  Petitioner's claim here, however, is not that the information was withheld in a bill of particulars, but that the time frame was not narrowed in the initial indictment.  Thus, it is not at all clear that the prosecutor violated any duty imposed by

11

state law concerning the way in which the indictment was drafted.  In any event, Petitioner has still not demonstrated how he was prejudiced by this alleged violation because the trial judge dismissed two of the three rape counts after the state rested.  The real issue concerning the failure to narrow the indictment is the absence of any instruction to the jury concerning the time frame applicable to the remaining rape count, and that issue is addressed below.

Petitioner also cites to *Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000), as an example of a case in which a prosecutor's improper vouching for a witness led to the issuance of a writ of habeas corpus.  In that case, the prosecutor was found to have committed "serious misconduct," but it was not because he improperly vouched for the credibility of a witness, it was because he characterized the witness' story "as having been consistent over time when there was no evidence supporting that factual assertion."  *Id*. at 700.  It was the act of misrepresenting the evidence and making an argument that lacked any evidentiary support, as well as the vouching that accompanied that improper conduct, that led the court to issue the writ.  No such misconduct occurred here, and the Court agrees that the questions asked to Detective Waugh about the consistency of Bonnie Parker's statements, while close to the line, were ultimately not so prejudicial that they affected the fairness of the trial.  Thus, Petitioner is not entitled to relief on his fourth claim.

### D.  CLAIM FIVE

In his fifth claim, Petitioner identifies multiple ways in which he asserts that his attorney was constitutionally ineffective.  The Report and Recommendation, relying on

12

decisions such as *Moye v. Corcoran*, 668 F. Supp. 2d 523  (S.D.N.Y. 2009), and  *Ryan v. Warren*, No. 05-cv-72481, 2006 WL 2073129 (E.D. Mich. July 26, 2006) , concluded generally that any evidence admitted because of counsel's failure to object to it (which failure forms part of the basis of this claim) was not prejudicial to petitioner, so that his claim failed on the second prong of the familiar *Strickland (v. Washington*, 466 U.S. 668 (1984)) test.  Other instances of alleged ineffectiveness, such as the questions counsel asked to Detective Waugh,  Pam Parker and the S.A.N.E. nurse, were also found not to be prejudicial, as was counsel's decision to call Petitioner's wife as a witness,  a decision which Petitioner himself characterized as unhelpful rather than harmful.  This Court agrees with the analysis of these aspects of the ineffective assistance of counsel claim and likewise does not discern the type of prejudice that would lead to the conclusion that Petitioner's Sixth Amendment right to counsel was violated.

The only argument raised in the objections that merits additional discussion is Petitioner's assertion that his defense was indeed harmed by counsel's decision to call his wife as a witness because it allowed the prosecutor to point out that Petitioner had placed her in the unenviable position of believing either her mother or her husband concerning the rape allegations.  Petitioner admitted before the jury that he had engaged in sexual intercourse and had other sexual contact with his mother-in-law.  His wife was therefore not placed in the position of denying that her mother told the truth about the existence of these  encounters, but only about whether her mother had consented.  As to that issue, the jury did not find that petitioner forced himself on his mother-in-law, but rather that she

13

lacked the mental capacity to consent.  Neither his wife's testimony nor the prosecutor's attempt to sway the jury concerning her having been called as a witness was, in the overall context of the trial, a decision that could reasonably be said to have affected the outcome of the trial.  Thus, this claim also lacks merit.

## IV.  BOTH PARTIES' OBJECTIONS - CLAIM TWO

Both Petitioner and Respondent object to the recommended disposition of claim two. Petitioner argues that any writ that issues on this claim should bar a retrial, while Respondent argues both that the claim was waived and that it lacks merit.  The Court will address Respondent's position first.

As to procedural default, Respondent argues that to the extent Petitioner's double jeopardy claim raised any issues about the sufficiency of the indictment, those arguments were waived because they were not raised prior to trial and the state appellate court clearly enforced that waiver.  The Report and Recommendation concluded, however, that the essence of petitioner's double jeopardy claim was not that the indictment was defective on its face by failing to specify a time frame for the three alleged rapes, but that once the trial court dismissed two of those counts for lack of evidence and held that the third count was supported only by the evidence of the February, 2005 incident, the failure to so advise the jury created the double jeopardy issue.  This claim could not have been raised prior to trial because it was not foreseeable that the jury would not be told to confine its deliberations to that incident even though the trial judge found that it was the only one about which sufficient evidence had been presented to support a conviction.  Thus, the Court agrees that

14

the double jeopardy claim, as presented by Petitioner and analyzed in the Report and Recommendation, was not procedurally defaulted by any failure to raise the claim prior to trial.  Because that is the only basis on which the state court of appeals found this claim to have been waived, there is no procedural bar to this Court's consideration of the merits of this claim.

As to the merits, Respondent contends that it was error for the Magistrate Judge to rely heavily on the Court of Appeals' decision in *Valentine v. Konteh*, 395 F.3d 626 (2005), because that is not the relevant Supreme Court precedent that must exist and conflict with the state court's judgment in order for a writ to be granted under § 2254(d).  Respondent recognizes that *Valentine* was premised on prior Supreme Court decisions, including, most significantly, *Russell v. United States*, 369 U.S. 749 (1962), but argues that  even though *Russell* announced the rule applied in *Valentine* that the double jeopardy clause is violated if a case is sent to the jury under an indictment that is so indefinite that the defendant could not plead an acquittal or conviction on the charge as a defense to a future prosecution this rule was never fully explicated by later Supreme Court decisions, and there is therefore no case on point with which the state court decision could conflict.

The Court finds this reading of the AEDPA overly restrictive.  As the Court of Appeals has acknowledged, "[a]lthough only Supreme Court case law is relevant under the AEDPA in examining what Federal law is 'clearly established,' the decisions of the United States Courts of Appeals may be informative to the extent we have already reviewed and interpreted the relevant Supreme Court case law to determine whether a

legal principle or right had been clearly established by the Supreme Court." *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003). As the Court of Appeals explained in *Boykin v. Webb*, 541 F.3d 638, 642 (6th Cir. 2008), this Court may grant a writ of habeas corpus not only when a state court "decides a case differently than the Supreme Court on materially indistinguishable facts," but also when it "arrives at a conclusion opposite to that reached by the Supreme Court on a question of law" or when "the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the Petitioner's case." Additionally, the Court of Appeals reaffirmed *Hofbauer's* holding that "[t]he court may look to lower courts of appeals' decisions, not as binding precedent, but rather to inform the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court." *Id*. Thus, the mere fact that the Supreme Court has never decided a case that presents exactly the same facts as Petitioner's case is not determinative. The real question is whether the Supreme Court has announced a legal principle with which the state courts' decision conflicts or that the State Courts unreasonably applied. As to that latter issue, an unreasonable application may occur when then state court "unreasonably refuses to extend [a legal principle from Supreme Court precedent] to a new context where it should apply." *Smith v. Bradshaw*, No. 1:04-cv-694, 2007 WL 2840379, at *6 (N.D. Ohio Sept. 27, 2007) *(citing Williams v. Taylor*, 529 U.S. 362, 407 (2000)).

In that regard, *Valentine*, which was decided well prior to the time Petitioner's state conviction became final (in fact, even before he was arrested and charged), is instructive.

16

First, like this case, it was a case filed by a state court defendant under 28 U.S.C. § 2254.  As here, the Court of Appeals was required to apply the deferential standard of review found in § 2254(d)(1).  As here, the case involved the second prong of the *Russell* test, namely whether the proceedings would allow the defendant to raise either an acquittal or a conviction as a bar to a second prosecution for the same offense.  Even though the Supreme Court had not decided a case that presented a factual scenario similar to the one before the *Valentine* court, that court did not hesitate to find that "these principles have been well-established for quite some time."  *Valentine*, 395 F.3d at 631 n.1 *(citing, inter alia, United States v. Cruikshank*, 92 U.S. 542 (1875)).  The Court also noted that it had previously applied the second prong of the *Russell* test in the context of a habeas corpus petition and had found in that case that the state court had also unreasonably applied that legal principle in a way that justified habeas corpus relief.  *See Isaac v. Grider*, 211 F.3d 1269 (6th Cir. 2000).  As this Court is permitted to do under *Hofbrauer*, it finds *Valentine* and *Isaac* instructive on the question of whether the legal principle announced in *Russell* in 1962 and applied several times by the Court of Appeals as the type of clearly established law contemplated by § 2254(d)(1) is, in fact, clearly established.  In fact, given *Valentine's* clear holding that it is, this Court would be hard-pressed to reach a contrary conclusion.  Thus, there is not only no obstacle to using the two-pronged *Russell* formulation in deciding whether the state court decision conflicts with or unreasonably applied clearly established Supreme Court law, but doing so would appear to be mandatory.

Most of Respondent's objection is based upon the incorrect proposition that

*Valentine* should be ignored for purposes of determining whether the state court's denial of relief to Petitioner on his double jeopardy claim was in conflict with federal law.  The objection addresses the merits of the Report and Recommendation's analysis of the constitutional issue only briefly and in a way that actually reinforces the conclusion that Petitioner's double jeopardy rights were violated.

The Report and Recommendation conceptualized the claim upon which relief was recommended in this way:

> The other part of [Petitioner's] double jeopardy argument is that, after the trial court ruled that there was not enough evidence presented by the prosecution to support any rape charge other than whichever one of the three original counts related to the February 23, 2006 incident, the failure of the court to tell the jury about that ruling, either in its closing instructions or otherwise, raised the real possibility that the jury convicted him based on other conduct, including conduct that was covered by one or both of the dismissed charges.  If that occurred, the double jeopardy clause would have been violated because the dismissal of those other charges for want of sufficient evidence, after the trial commenced, constituted a bar to further prosecution for those offenses.

(Doc. # 20, at 28.)  As the Report and Recommendation also notes, the state court of appeals denied relief on this theory at least in part because it reasoned that the jury's verdict could have been based on Petitioner's admissions about having had sex with his mother-in-law. Those admissions, however, did not include the single incident that the trial judge found to be supported by the evidence, so that there was, even in the court of appeals' view, the distinct possibility that Petitioner was convicted of a rape count that had been dismissed by the trial judge at the close of the prosecution's case.  Certainly, the jury could have

disbelieved Petitioner's testimony when he denied the specific instance of rape that allegedly occurred in February 2006, but there is no way to know whether that occurred, and the jury was given no guidance about what conduct it could use for purposes of conviction.  It was not even told at the commencement of the defense's case that two rape counts had been dismissed, and even after the jury learned that fact when it was instructed at the close of the case, it was never informed that it was required to confine its deliberations to a count of rape that had been narrowed by that ruling to the February 2006 time frame.

Respondent does not controvert these facts.  Rather, the objections acknowledge that although the prosecutor's closing argument focused mainly on the February 2006 incident, at one point the argument "pivot[ed]" to a discussion of Petitioner's admission to other acts of intercourse.  This fact is dismissed based on what Respondent describes as an assumption "that the jury was focused on the [February 2006 incident], and not any earlier incidents that [Petitioner] admitted to." (Doc. # 23, at 8.)  Such an assumption, however, has no foundation in the record, especially given the lack of any instruction to the jury that it could not convict Petitioner based on any act of intercourse to which he had admitted in his testimony.

Further, Respondent argues that because Petitioner did admit to conduct that could have supported a single rape conviction, the jury's verdict was supported by sufficient evidence.  In Respondent's words, "because [Petitioner] admitted to <u>three</u> separate sexual encounters involving intercourse (which he of course claimed were consensual) . . . the

third rape charge could still be supported by [Petitioner's] admission to the third act of intercourse he had with his mother-in-law, *if not the February 23, 2006 incident*." *(Id.* (emphasis supplied)). But that is exactly the point. The trial judge's dismissal of the other two counts of rape was specifically premised upon his finding that the prosecution had proved, at most, *only the February 23, 2006 incident.* Petitioner was entitled, after the counts were dismissed, not to be put in jeopardy again (let alone convicted) for whatever conduct was subsumed within those counts, and he was entitled to believe that by testifying about acts of intercourse other than the one that allegedly occurred on February 23, 2006, he would not be providing the jury with the very evidence to convict him. Yet this is precisely what may have happened. Given the state of the record, there is simply no way to know. That uncertainty is sufficient to create the real possibility that Petitioner was convicted on a dismissed charge, and that real possibility is enough to entitle him to relief under the double jeopardy clause as authoritatively explained in *Russell* and *Valentine.* The Court therefore finds Respondent's objections to the Report and Recommendation to be without merit, and it adopts the discussion of this claim found in that Report.

Petitioner's objections to the proposed disposition of his second claim raise a different issue. He argues that any writ that issues should be unconditional and should bar a retrial on the single count of rape relating to the February 23, 2006 incident. The sole basis for this argument is that "the jury, in the process of its deliberations, may have found reasonable doubt as to the truth of the February 23, 2006 allegations before moving on to consider Dorsey's testimony and acquitting him for the acquitted conduct in 2005." (Doc.

20

# 24, at 12-B.)  He argues that he should be given the "benefit of the doubt" on this issue and that this Court should conclude that he was acquitted on the February 23, 2006 alleged rape, making any retrial on that count a violation of his double jeopardy rights. (*Id.* At 13.)

Petitioner cites no authority for the proposition that a retrial under these circumstances should be prohibited.  Usually, an unconditional writ is granted only when the underlying constitutional provision itself would be violated by retrial.  *Cf. Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988).  Here, although there is a "real possibility" that the jury convicted Petitioner on the basis of his testimony about acts of sexual intercourse not subsumed within the indictment, that does not inexorably lead to the conclusion that the jury found him not guilty of the charged act.  There is simply no way to know.  Just as the Court will not assume, for Respondent's benefit, that the jury considered only evidence of the February 23, 2006 incident when it reached its verdict, the Court will not assume, for Petitioner's benefit, that it did not.  The only way to resolve the issue properly is for the state to retry Petitioner under circumstances in which both the parties and the fact-finder are fully aware of what evidence can be used in determining Petitioner's guilt or innocence.  Thus, the Court finds Petitioner's objection to the issuance of a conditional writ to lack merit.

## V.  ORDER

For these reasons, the Court **OVERRULES** the parties' objections to the Magistrate Judge's Report and Recommendation and **ADOPTS** the Report and Recommendation in its entirety.  The Court **ISSUES** a conditional writ of habeas corpus on Petitioner's second

claim.  The State of Ohio shall  release Petitioner from custody unless he is retried within ninety days of the issuance of this writ.  This case is **TERMINATED**.

      **IT IS SO ORDERED.**


            **_/s/_  Gregory L. Frost**
            Gregory L. Frost
            United States District Judge